Mason L. GIBSON, Plaintiff-Appellant,

v.

Margaret M. HECKLER, Secretary of Health and Human Services, Defendant-Appellee.

No. 82–7383.

United States Court of Appeals, Eleventh Circuit.

June 12, 1985.

David M. Olive, J.T. Simmonetti, Jr., Birmingham, Ala., for plaintiff-appellant.

Mary P. Thornton, Asst. U.S. Atty., Birmingham, Ala., for defendant-appellee.

Before GODBOLD, Chief Judge, ANDERSON, Circuit Judge, and THORNBERRY *, Senior Circuit Judge.

PER CURIAM:

Appellant Gibson seeks reversal of the district court's decision affirming a decision of the Administrative Law Judge ("ALJ") that Gibson was not disabled under the Social Security Act and, thus, not entitled to disability benefits. Because the ALJ improperly and mechanically applied regulatory guidelines in determining that Gibson was not disabled, we vacate the decision of the district court and remand with instructions to remand to the agency for further proceedings consistent with this opinion.

## BACKGROUND

On September 29, 1979, Gibson filed an application for disability benefits. The parties agree, based on the medical evidence in the record, that Gibson has a chronic medical impairment likely to last in excess of twelve months, although the parties disagree as to the severity of the impairment. The primary impairment arises out of an on-the-job injury to Gibson's back sustained in 1970, which later required a laminectomy (removal of the posterior arch of a vertebra). Gibson alleges that his back problem results in scoliosis (an appreciable lateral deviation in the normally straight vertical line of the spine), curvature of the spine, and chronic and severe lower back pain. Gibson also maintains that he suffers from another set of impairments, shortness of breath and chest pain. Appar-

---

* Honorable Homer Thornberry, U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

ently, Gibson has smoked one and one-half packs of cigarettes per day for fifteen years. Most of the medical evidence simply states that Gibson suffers from chest pain of unknown cause; however, one doctor determined that Gibson had chronic obstructive pulmonary disease and suspected angina pectoris (a sudden chest pain, accompanied by a feeling of suffocation due, most often, to a lack of oxygen flow to certain muscles of the heart). The ALJ agreed that Gibson had some chronic back problem and resultant pain, but did not attribute any significance to Gibson's chest pain. Significantly, the ALJ found, consistent with the medical evidence and Gibson's testimony, that as a result of his back problem Gibson could neither sit nor stand for more than four hours in an eight-hour work day (hereafter referred to as the "sit/stand option" or "sit/stand limitation"). Record, vol. 2 at 16.

## DISCUSSION

An inquiry to determine whether a claimant is disabled follows two steps. The first step requires that the claimant prove by a preponderance of the evidence that he has a medically determinable physical or mental impairment likely to last for a continuous period of not less than twelve months which prevents him from performing his past work. 42 U.S.C.A. § 423(d)(1)(A); 20 C.F.R. § 416.905(a).[1] The burden of proving such an impairment is on the claimant. *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir.1982); *Cowart v. Schweiker*, 662 F.2d 731, 736 (11th Cir.1981); 42 U.S.C.A. § 423(d)(5). The second step requires an inquiry into whether the claimant, despite his inability to return to his past work, can nevertheless perform a job which exists in

substantial numbers in the national economy. 42 U.S.C.A. § 423(d)(2)(A); 20 C.F.R. § 416.905(a). With respect to this second step, the burden is on the Secretary to prove by a preponderance of the evidence that there are jobs in substantial numbers in the economy which the claimant can perform despite the impairment. *Cowart*, 662 F.2d at 736.

In the instant case, the ALJ found that Gibson had an impairment which rendered him unable to perform his past relevant work as a brick mason, an assistant to a brick mason, and an automatic welder. Record, vol. 2 at 16. Thus, Gibson proved a prima facie case of disability, and the burden shifted to the Secretary to prove by a preponderance of the evidence that Gibson was able to perform a job which existed in substantial numbers in the national economy.

The only direct evidence of Gibson's ability to perform work existing in the national economy was presented by Patsy Bramlett, a disability rehabilitation specialist with the Alabama Department of Education's Division of Rehabilitation. Bramlett testified that she was very familiar with the Dictionary of Occupational Titles ("DOT") and the Occupational Outlook Handbook,[2] comprehensive listings of occupations promulgated by the United States Department of Labor, and stated that she had received training in the use of these and similar resources. *Id.* at 63–64. She testified that a major part of her work was determining whether, and with what rehabilitation, the prior work skills of her physically and mentally impaired clients were transferable, thus enabling them to reenter the work

---

1. Certain impairments are so severe either when considered alone or in conjunction with other impairments that, if such impairments are proved, the regulations require a finding of disability without further inquiry into the claimant's ability to work. 20 C.F.R. § 404.1520(d); *see* 20 C.F.R. Part 404, Subpart P, Appendix 1 (enumerating and explaining so-called "listed impairments"). The ALJ found that Gibson did not meet any listed impairment, Record, vol. 2 at 13, and Gibson does not dispute that finding on appeal.

2. The DOT and the Occupational Outlook Handbook are two of the authoritative government publications of which the Secretary has taken administrative notice for use in determining whether work exists in substantial numbers in the national economy. *See* 20 C.F.R. §§ 416.-966(d)(1), (5). The DOT classifies work as "sedentary," "light," "medium," "heavy," or "very heavy" in accordance with the use of those terms by the Secretary in making determinations of residual functional capacity, *i.e.*, a claimant's ability to do work despite impairments. *Id.* at § 416.967.

force. *Id.* at 65. Bramlett then stated that she had met with Gibson, reviewed his educational and work background, and his medical reports. *Id.* at 65–66. At that point, Gibson's attorney propounded a hypothetical question to Bramlett, based upon the medical evidence in the record and restricting Gibson to jobs allowing a sit/stand option, but limiting Gibson to sedentary work. *See* 20 C.F.R. § 416.967(a) (defining sedentary work as work involving the lifting of no more than ten pounds at a time and occasionally requiring the carrying of small articles and tools). Bramlett stated that based on the hypothetical Gibson could not return to his prior work because such work was in the medium category. Record, vol. 2 at 67–68. *See* 20 C.F.R. § 416.967(c) (defining medium work as involving the lifting of up to fifty pounds at a time with frequent lifting or carrying of objects weighing up to twenty-five pounds). Bramlett then stated that in her opinion there were no sedentary jobs in the national economy in substantial numbers which Gibson could perform. Record, vol. 2 at 69. In coming to her conclusion, she relied heavily on the fact that Gibson had a limited educational background (Gibson completed the seventh grade at age 16), and the fact that any sedentary job found otherwise appropriate would have to allow a sit/stand option to accommodate Gibson's particular physical needs. *Id.*

The ALJ conducted a cross-examination of Bramlett. He asked her whether, assuming the other record evidence, the sit/stand option *and* that Gibson could perform medium work, *i.e.*, work requiring the lifting and carrying of fifty pounds occasionally and twenty-five pounds frequently, Gibson could return to his past relevant work. She stated that he could not. *Id.* at 71–72. She stated, however, that if medium work were possible, there would be a "wider range" of work open to Gibson in the national economy. *Id.* at 73. She emphasized, nevertheless, that the sit/stand option would still greatly restrict Gibson's access to the marketplace: "Most of these [medium] jobs that would be available to him, he would physically have a lot of problems performing those jobs because they don't allow for a lot of frequent changing of positions.... I feel like based on ... [Gibson's] restrictions, there's going to be almost no job available to him." *Id.* at 73–74. Bramlett then stated that she surveyed a sampling of twenty to twenty-five sedentary jobs in the DOT and found that Gibson could perform none of those because they required sitting 6 or more hours per 8-hour day. *Id.* at 74. She also testified that "when I got above the sedentary range into the light range where you could possibly do a job standing, it was primarily standing the whole day, at least 6 hours out of 8." *Id.* The ALJ asked Bramlett if Gibson's sit/stand limitation would prevent him from employment as a self-service gas station attendant. She answered that it would be a "possibility," but expressed doubt that Gibson's educational limitations would permit him to do such work. She said she would have to check the DOT "to see what was required" of a self-service gas station attendant. *Id.* at 75.

The ALJ found that Gibson was not disabled. First, the ALJ determined that Gibson could "perform a modified range[3] of sedentary or light work." *Id.* at 15. "Light work" is defined generally as the ability to lift no more than twenty pounds at a time with frequent lifting or carrying of ten pounds.[4] 20 C.F.R. § 416.967(b).

The ALJ then proceeded to find that Gibson had the ability to engage in substantial gainful work "on the basis of the principles and definitions in the regulations and the use of the rules as a framework." Record, vol. 2 at 15. Specifically, the ALJ applied Rule 201.25 of 20 C.F.R. Part 404,

---

**3.** Presumably, the ALJ's use of the term "modified range" was a reference to Gibson's sit/stand limitation, a factor curiously not taken into account when the ultimate finding of "not disabled" was made. *See* discussion in text *infra.*

**4.** This finding, that Gibson could do no more than light work, renders purely hypothetical the ALJ's question to Bramlett premised upon Gibson's ability to do medium work.

Subpart P, Appendix 2 (the "grids" or "App. 2"). The grids are a series of matrices which correlate a set of variables—the claimant's residual functional capacity (*i.e.,* the ability, despite impairments, to do sedentary, light, etc. work), age, educational background, and previous work experience. Upon the entry of a set of these variables into the appropriate matrix a finding of disabled or not disabled is rendered. In *Heckler v. Campbell,* 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983), the Supreme Court held that the use of the grids to determine the existence of jobs in the national economy was a legitimate use of regulatory power derived from the Social Security Act. The Court held that the inquiry about the presence of jobs in the economy was the "type of general factual issue [which] may be resolved as fairly through rulemaking as by introducing the testimony of vocational experts at each disability hearing." 461 U.S. at 468, 103 S.Ct. at 1958, 76 L.Ed.2d at 75. The *Campbell* court also held that when the grids are properly used the Secretary need not introduce evidence of specific available jobs that the claimant is able to perform despite the existing impairments. *Id.* at 468–472, 103 S.Ct. at 1957–1960, 76 L.Ed.2d at 75–77.

However, the *Campbell* court recognized that the Secretary may rely on the grids only in "appropriate cases." *Id.* at 466, 103 S.Ct. at 1956, 76 L.Ed.2d at 74. The Court took pains to indicate at several points in its opinion that the regulations are only applicable where each variable on the appropriate grid matrix accurately describes the claimant's situation as a matter of objective historical fact found by the ALJ. *Id.* at 468 & n. 11, 103 S.Ct. at 1958 & n. 11, 76 L.Ed.2d at 75 & n. 11; *see also id.* at 462 n. 5, 103 S.Ct. at 1955 n. 5, 76 L.Ed.2d at 71 n. 5. The Court noted that the introductory regulatory preface to the grids states that

> [i]f an individual's capabilities are not described accurately by a rule, the regulations make clear that the individual's particular limitations must be considered.... [T]he regulations ... recognize that some claimants may possess limitations that are not factored into the guidelines.... Thus, the regulations provide that the rules will be applied *only* when they describe a claimant's abilities and *limitations* accurately.

*Id.* (emphasis added).[5]

The above discussion indicates where the ALJ erred in this case. The ALJ made factual findings for each grid variable, a necessary predicate for use of the grids. *See* App. 2, § 200.00(c). He found that Gibson had a limited seventh grade education, had no transferable work skills,[6] and was capable of light or sedentary work (*i.e.,* Gibson's residual functional capacity). The ALJ then applied Rule 201.25 which analyzes the variables of a younger individual (age 18–44), with a limited (or less)

---

**5.** The regulations succinctly state when the grids should be used by the Secretary to determine disability and when they should not:

> The Dictionary of Occupational Titles includes information about jobs (classified by their exertional and skill requirements) that exist in the national economy. Appendix 2 provides rules using this data reflecting major functional and vocational patterns.... The rules in Appendix 2 do not cover all possible variations of factors. Also, as we explain in § 200.00 of Appendix 2, we do not apply these rules if one of the findings of fact about the person's vocational factors and residual functional capacity is not the same as the corresponding criterion of a rule. In these instances, we give full consideration to all relevant facts in accordance with the definitions and discussions under vocational considerations. However, if the findings of fact made about all factors are the same as the rule, we use

that rule to decide whether a person is disabled.

20 C.F.R. § 404.1569; *see also* App. 2, §§ 200.-00(a), (d); *cf. id.* at § 200.00(e).

**6.** The ALJ finding stated that "in view of the claimant's age, education, and residual functional capacity, the issue of transferability of work skills is not material." Record, vol. 2 at 16. Although this statement is less than clear, we view it as a determination that Gibson's work skills are not transferable, given that the grid matrix used indicated nontransferability, *see* App. 2, Table 1, Rule 201.25, and the record evidence, apparently concurred in by the ALJ, Record, vol. 2 at 16, indicated that Gibson could no longer perform work akin to his past relevant work as a manual laborer. *See* 20 C.F.R. § 416.968(d)(2) (common factors indicating likelihood of transferability among jobs).

education (*see* 20 C.F.R. § 416.964(b)(3) (defining limited education)), without transferable work skills, and with a sedentary residual functional capacity, and rendered a finding of not disabled. *See* App. 2, Table 1, Rule 201.25.

■ Our discussion of the *Campbell* case and the introductory regulations to the grids lead us to the conclusion that the grids should not have been applied in this case. The ALJ's determination that, based on his physical abilities, Gibson had the *exertional* ability to perform *some* sedentary work may have been supported by the evidence; however, the residual functional capacity variable of grid rule 201.25 does not take into account a sit/stand limitation. As the ALJ found, Gibson could only perform jobs with the sit/stand option. The only evidence presented at the hearing concerning jobs amenable to the sit/stand option was the testimony of the vocational expert, Patsy Bramlett. As indicated by Bramlett's testimony to the effect that her random sampling of sedentary jobs in the DOT uncovered *no* jobs amenable to a sit/stand option, it is clear that the general category of sedentary jobs does not remotely resemble the category of jobs existing in substantial numbers in the national economy which can accommodate Gibson's *individual* residual functional capacity. This is thus a classic case where "one of the findings of fact does not coincide with the corresponding criteria of a rule" and where, therefore, "the rule does not apply . . . and, accordingly, does not direct a conclusion of disabled or not disabled." App. 2, § 200.00(a).[7]

■ Having determined that the ALJ applied the grids in conjunction with circumstances rendering such application inappropriate and violative of regulatory directive, we must determine what relief is due Gibson. We are cognizant of the fact that once the ALJ found that Gibson could not perform his past relevant work, the burden was on the Secretary to prove by a preponderance of the evidence that Gibson could perform a job which existed in substantial numbers in the national economy. *Cowart,* 662 F.2d at 736. Because the Secretary has inappropriately relied upon the grids, she has technically failed to carry her burden. Moreover, we realize that on the present record, the evidence on the dispositive issue, consisting mainly of Bramlett's testimony, weighs heavily in Gibson's favor. However, we must be careful not to usurp the ALJ's role as factfinder in a case where, as here, factfinding was improperly conducted. *Cf.* 42 U.S.C.A. § 405(g) (the factual findings of the Secretary are conclusive if supported by "substantial evidence"). Thus, we remand the case to the district court with instructions to remand to the Secretary for appropriate factfinding.

On remand, the ALJ should reconsider all the facts and circumstances of the case in accordance with the statutory and regulatory principles applicable in cases where the grids do not apply. *See* App. 2, § 200.00(a) ("In any instance where a rule does not apply, full consideration must be given to all of the relevant facts of the case in accordance with the definitions and dis-

---

7. The fact that the ALJ stated that he used Rule 201.25 "as a framework," Record, vol. 2 at 15–16, is of no consequence. After a careful reading of the ALJ's opinion, we are convinced that he mechanically applied Rule 201.25 without regard to the fact that Gibson's situation did not comport with the rule in at least one crucial aspect. *See id.* at 14–16. The language of the opinion indicates that the ALJ felt bound by the grids to render a finding of "not disabled." *See id.* at 15 ("Using as a framework Rule 201.25 . . . claimant *must* be found 'not disabled' ") (emphasis added). We are aware that the grids, although not determinative, can provide a "frame of reference" when a claimant's condition does not fully coincide with the criteria of a rule, *e.g.,* where a claimant has a combination of impairments, *see* App. 2, § 200.00(d); however, the regulations indicate that where a claimant's condition is not met by the criteria of a rule the disability determination is generally made by reference to individualized evidence and principles relating to the assessment of individual factors found elsewhere in the regulations, *see* App. 2, §§ 200.00(a), (c), and may not in any case be made by the mechanical approach taken in the instant case. Moreover, in this case, since the grids are grossly overinclusive with respect to residual functional capacity, use of the grids would be inappropriate even as a "frame of reference." *See* discussion in text *infra.*

cussions of each factor in the appropriate sections of the regulations"). The ALJ is, of course, entitled to evenhandedly supplement the record on the dispositive issue if he finds it appropriate. However, any use of the grids as a measure of Gibson's ability to work would be inappropriate since Gibson's sit/stand limitation renders the residual functional capacity variable grossly over-inclusive. *See supra* note 7.

Accordingly, the decision of the district court is vacated and remanded for proceedings consistent with this opinion.

VACATED and REMANDED.[8]

---

**8.** Of course, since the ALJ on remand will be considering all the relevant facts without use of the grids, he will also necessarily consider claimant's age on an individual basis. Thus, we need not decide whether claimant would have been entitled to a remand on the basis of our recent decisions in *Broz v. Schweiker,* 677 F.2d 1351 (11th Cir.1982), *vacated and remanded sub nom., Heckler v. Broz,* 461 U.S. 952, 103 S.Ct. 2421, 77 L.Ed.2d 1311, *adhered to,* 711 F.2d 957 (11th Cir.), *modified,* 721 F.2d 1297 (11th Cir. 1983), and its progeny. *See Reeves v. Heckler,*

734 F.2d 519 (11th Cir.1984); *Wilson v. Heckler,* 734 F.2d 513, 519 (11th Cir.1984).

Similarly, since we are remanding this case for further proceedings we need not address Gibson's argument that the ALJ improperly engaged in "sit and squirm" jurisprudence. We are confident that on remand the ALJ will evaluate the evidence concerning Gibson's pain in accordance with this court's "sit and squirm" precedents. *See, e.g., Wilson,* 734 F.2d at 516–18; *Freeman v. Schweiker,* 681 F.2d 727, 731 (11th Cir.1982).