Dorothy A. CUMMINGS, Plaintiff,

v.

Otis R. BOWEN, M.D., Defendant.

No. 87 C 5167.

United States District Court,
N.D. Illinois, E.D.

Jan. 13, 1988.

Frederick J. Daley, Chicago, Ill., for plaintiff.

Anton R. Valukas, U.S. Atty., Margaret C. Gordon, Asst. U.S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Dorothy Cummings ("Cummings") sought social security disability benefits under 42 U.S.C. § 416(i)[1] due to injuries she sustained in a September 1983 automobile accident. Administrative Law Judge ("ALJ") Allyn Brooks eventually approved a closed period of benefits, ruling Cum-

---

1. All further references to the Social Security Act will take the form "Section—," referring to the U.S. Code numbering rather than the internal numbering of the Act.

mings was disabled only through January 27, 1986. Cummings exhausted her administrative appeals and then brought this action against the Secretary of Health and Human Services ("Secretary").

Both sides have now moved for summary judgment based on the administrative record. For the reasons contained in this memorandum opinion and order, both motions are denied and the case is remanded to the Appeals Council for its consideration pursuant to 20 C.F.R. ("Reg.") § 404.970(b).

## Background

At the time of her April 7, 1986 hearing before ALJ Brooks, Cummings was a 37-year-old woman with a ninth-grade education. She had worked as a housekeeper in hotels and as a nursing aide in a nursing home.

As the result of her September 25, 1983 automobile accident, Cummings suffered an extremely comminuted[2] fracture of the right femur, multiple fractures of the pelvis and a fractured right tibia (R. 55, 166). Those injuries required her hospitalization through December 12, 1983, when she was discharged in a spica body cast (id.). In January 1984 the cast was removed (R. 231), but she was then confined to a wheelchair for three months and since then has used either a cane or crutches to assist her (R. 88-90).

Cummings first applied for benefits in January 1985. That application was denied at the initial stages of review and she did not appeal (R. 119-21). When she applied again on May 9, 1985, benefits were again denied. She appealed and obtained a de novo hearing before the ALJ.

ALJ Brooks determined Cummings had been disabled from the date of her accident through January 27, 1986, by which time she had regained the "capacity to perform a wide range of sedentary work" (R. 57). Accordingly the ALJ treated Cummings' May application as a petition to reopen the January application, reopened that applica-

tion and awarded benefits from September 25, 1983 through January 27, 1986 (R. 56, 58).

Cummings requested that the Appeals Council review the determination that she was no longer disabled. After she was allowed an extension to provide additional evidence supporting her claim (R. 5), she furnished a report by a registered clinical psychologist (the "Snyder Report") indicating she has low intelligence, marginal literacy and several emotional or psychological problems (R. 14-32). She also submitted an evaluation by a vocational specialist (the "Gentry Report") concluding, based on the evidence before the ALJ and the Snyder Report, that there were few if any jobs in the national economy Cummings could perform (R. 33-36).

On May 19, 1987 the Appeals Council declined to review ALJ Brooks' decision (R. 3-4). That decision thus became Secretary's final action, from which the present appeal is taken.

## Appeals Council Denial of Review

Secretary's regulation defining when the Appeals Council should grant review of an ALJ's determination says (Reg. § 404.970):

(a) The Appeals Council will review a case if—

(1) There appears to be an abuse of discretion by the administrative law judge;

(2) There is an error of law;

(3) The action, findings or conclusions of the administrative law judge are not supported by substantial evidence; or

(4) There is a broad policy or procedural issue that may affect the general public interest.

(b) If new and material evidence is submitted with the request for review, the Appeals Council shall evaluate the entire record. It will then review the case if it finds that the administrative law judge's action, findings, or conclu-

---

**2.** Comminuted means "broken into fragments" (Stedman's Medical Dictionary 303 (5th ed. 1982)).

sion is contrary to the weight of the evidence currently in the record.

That clearly sets out two different standards, one applicable where "new and material evidence" is submitted and one where it is not.

Though Cummings submitted additional evidence (the Snyder and Gentry Reports) to the Appeals Council, it nevertheless denied review, telling Cummings her case met none of the four criteria applicable under Reg. § 404.970(a)(R. 3). While the Appeals Council did not explicitly state Cummings' additional evidence was not new and material, that conclusion is implicit in its reference to Reg. § 404.970(a) rather than 404.-970(b).[3] Secretary now defends the Appeals Council's action on that ground.

It is difficult to imagine any valid characterization of the additional evidence as either not new or not material. Both reports were generated after ALJ Brooks' decision—they are clearly "new." And they are just as clearly "material" to a determination whether Cummings was disabled as defined in the Act:

1. The Snyder Report opines she met listings 12.07 and 12.08 for disability.

2. The Gentry Report says that there are very few occupations in the national economy for which she is able.

Had ALJ Brooks been provided those reports at the time of the hearing, the determination might well have been different.[4] Thus the additional information fits the classic test of materiality.

Secretary argues the two reports are not material because they involve alleged disabling conditions not presented to the ALJ. In that respect Secretary relies primarily on the 1980 amendments to Section 402(j)(2):

An application for any monthly benefits under this section filed before the first month in which the applicant satisfies the requirements for such benefits shall be deemed a valid application (and shall be deemed to have been filed in such first month) only if the applicant satisfies the requirements for such benefits before the Secretary makes a final decision on the application and no request under section 405(b) of this title for notice and opportunity for a hearing thereon is made or, if such a request is made, before a decision based upon the evidence adduced at the hearing is made (regardless of whether such decision becomes the final decision of the Secretary).

Secretary correctly notes that amendment was enacted to prevent "floating" applications, in which evidence of a worsening condition is brought forward after the ALJ reaches a decision (see S.Rep. No. 408, 96th Cong., 2d Sess. 57, *reprinted in* 1979 U.S.Code Cong. & Ad.News 1335). But by its own terms Section 402(j)(2) is inapplicable to Cummings' claim. She *was* already eligible for benefits in the month she filed her application,[5] so she does not need to rely on that Section because of

---

**3.** This analysis is further bolstered by the letter from Appeals Council Member O'Bryant warning Cummings' lawyer the Council would not consider additional evidence not meeting that standard (R. 37).

**4.** This Court has of course not held the Snyder and Gentry Reports mandate a finding Cummings was disabled past January 1986. That determination is for Secretary in the first instance. However, one issue argued by Cummings in her briefs before this Court should be clarified to avoid confusion on remand, should the additional evidence indicate disability. Cummings says the new evidence as to her mental condition relates back to the disability period at dispute here, from January 27, 1986 to the hearing date. It is true that evidence as to the level of her intelligence on a date after the hearing is probative of her intelligence during

the disputed benefits period, barring evidence to the contrary (see *Guzman v. Bowen,* 801 F.2d 273, 275 (7th Cir.1986) (per curiam)). But that presumption does not apply to the evidence of severe emotional problems contained in the Snyder Report. While Secretary may not mechanically use the date of diagnosis as the date of onset for those conditions (see generally *Lichter v. Bowen,* 814 F.2d 430, 434–36 (7th Cir.1987)), he must evaluate when Cummings' emotional problems became severe on the basis of all the evidence. Thus evidence of Cummings' emotional disorders may or may not be probative of her condition during the benefits period.

**5.** ALJ Brooks determined Cummings was eligible from September 25, 1983 through January 25, 1986. Her application was filed in 1985.

becoming eligible only at a later date. Moreover, she does not seek to introduce evidence of a new or worsened condition, but rather of her condition at the time ALJ Brooks determined she was no longer disabled. Were Section 402(j)(2) read to preclude the Appeals Council from considering new and material evidence of a claimant's condition at the time of the ALJ's decision, the provisions of Reg. § 404.970(b) governing the Council's treatment of just such evidence would be rendered nugatory. For at least those two reasons, the Secretary's reliance on Section 402(j)(2) is totally misplaced.

Secretary also points (albeit obliquely) to Section 405(g) as precluding consideration of the Snyder and Gentry Reports:

> The court may ... remand the case to the Secretary for further action by the Secretary, and it may at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for failure to incorporate such evidence into the record in a prior proceeding.

That provision had also been amended in 1980 in an effort to limit the circumstances under which a district court may remand to the Secretary for consideration of "new evidence." Before 1980 a district court could remand at any time "on good cause shown," without the claimant specifically showing he or she had good cause for not presenting the evidence earlier. Secretary is right in saying Cummings cannot show good cause for failing to present the evidence at her hearing.[6] If then the Snyder and Gentry Reports are "new evidence" within Section 405(g)'s intended sense, Cummings' claim cannot be remanded for Secretary to consider them.

That treatment of evidence already tendered to Secretary *before* the case is brought to a district court would prove too much. It would leave no means to correct the Appeals Council's erroneous exclusion of such evidence. Section 405(g) requires a claimant to show good cause for failing to introduce evidence "in a prior proceeding," not simply at the ALJ hearing level. Here Cummings did try to introduce this evidence before Secretary, and the Appeals Council's error in refusing to consider it certainly constitutes good cause for Cummings' inability to include it in the record.

While Cummings may not have had good cause for waiting to raise this issue until requesting review by the Appeals Council, there is no good cause requirement for presenting new evidence at that level.[7] Indeed it will be recalled the Appeals Council specifically allowed Cummings an extension of time to adduce new evidence. In sum, Section 405(g) also does not bar remand for Secretary to consider the effects of the Snyder and Gentry Reports on his determination.[8]

---

**6.** Cummings makes an effort to show good cause, asserting the psychological and intelligence testing was performed in response to the ALJ's erroneous conclusion that her pain testimony lacked credibility. But the real problem is that Cummings never raised her intelligence or emotional state before the ALJ in any manner, not that the ALJ found her proof on those issues lacking. Cummings was represented by counsel at her hearing, so there is really no excuse for silence on the issue, even if she could not afford the testing at that time.

**7.** Another route leads to the same conclusion: When the matter came before this Court, the reports submitted to the Appeals Council were not really "new evidence" because they had been presented to Secretary *before* his decision became final.

**8.** This opinion's conclusion may perhaps be at odds with the result reached in *Willis v. Secre-*

*tary of Health and Human Services*, 727 F.2d 551, 553–54 (6th Cir.1984) (per curiam), although that opinion does not analyze the problem discussed here. In *Willis* the claimant introduced evidence to the Appeals Council and the court denied a remand for its consideration, apparently imposing a good cause requirement on introducing new evidence before the Council (*id.*). But it is not clear from the court's opinion what the Appeals Council had done. *Willis, id.* at 552 says the determination was "upheld" by the Council, which sounds as though the Council may have affirmed after granting review, but the overall tone of the opinion suggests the Council had denied review. In any case, there is no indication in *Willis* that the court considered whether the Council erred by excluding evidence. This Court's research finds no decision by our Court of Appeals reading the Section 405(g) limitation on remand authority so broadly. For example, *Waite v. Bowen,* 819 F.2d 1356, 1361–62 (7th Cir.1987) found no good

Plainly, then, Secretary's present decision cannot stand. It remains necessary to consider whether remand or outright reversal is the appropriate outcome. In that respect the starting point for analysis is the fact that when the Appeals Council denied review, ALJ Brooks' decision became Secretary's final action. If that decision is not supported by substantial evidence in the record before the ALJ, and if that record called for a finding of Cummings' continued disability, this Court should reverse Secretary's decision and award benefits. This opinion must therefore go on to review the ALJ's determination to see if it passes muster.

### ALJ Brooks' Determination

This Court may reverse ALJ Brooks' determination that Cummings was not disabled only if that determination is not supported by substantial evidence. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938), has defined "substantial evidence" as:

> such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

Again, because ALJ Brooks' determination is Secretary's final action, this Court may look only to the evidence in the record before the ALJ for a possible outright reversal. Many of the challenges Cummings raises rely on the combined effects of her intelligence, emotional condition and physical limitations. Those challenges necessarily fail at this juncture because there was nothing in the record before ALJ Brooks to support findings based on mental impair-

ments. After a brief review of the ALJ's decision, this opinion will therefore deal with each of Cummings' other objections in turn.

### 1. Analysis by the ALJ

■ ALJ Brooks' determination followed the familiar five-step procedure outlined by Secretary's extensive procedural regulations. *Garfield v. Schweiker,* 732 F.2d 605, 607 n. 2 (7th Cir.1984) summarizes that test for determining "disability":

> The following steps are addressed in order. (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled. 20 C.F.R. § 404.1520 (1983).[9]

Once a claimant has demonstrated an impairment of sufficient severity to prevail at step 4, *Smith v. Schweiker,* 735 F.2d 267, 270 (7th Cir.1984) teaches:

> The burden then shift[s] to the agency to show the claimant retained the residual functional capacity to perform other work in the national economy.

While Cummings asserts in passing that her impairment satisfies the "listings" in

---

cause for attempting to introduce evidence before the district court that could have been presented in a supplemental submission to the Appeals Council. There is no suggestion there that a good cause showing would be a prerequisite to such an administrative submission. This opinion's reading of Section 405(g) also makes sense because it allows claimants to provide new evidence of existing conditions until Secretary's decision becomes final, but makes doing so after that more difficult.

**9.** As of the date of the Hearing *Johnson v. Heckler,* 769 F.2d 1202, 1209–13 (7th Cir.1985) had

invalidated step 2 of that formulation. ALJ Brooks therefore did not use that step when evaluating Cummings' alleged disability. Since then, however, *Bowen v. Yuckert,* —— U.S. ——, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987) has upheld the validity of step 2, reversing an opinion by the Ninth Circuit that had reached the same result as *Johnson.* On June 16, 1987 the Supreme Court therefore vacated and remanded *Johnson* (—— U.S. ——, 107 S.Ct. 3202, 96 L.Ed.2d 690). Given the result in this opinion, the ALJ's prior handling of the step 2 issue is irrelevant now. However, on remand Secretary may apply step 2 if he deems it appropriate.

step 3,[10] her primary objection is to ALJ Brooks' determination that as of January 26, 1986 she could perform a wide range of sedentary work and therefore did not meet the requirements of step 5. At that fifth and final step the ALJ must consider all the claimant's physical and mental impairments (Regs. §§ 404.1561, 416.961), the claimant's age (Regs. §§ 404.1563, 416.963), education (Regs. §§ 404.1564, 416.964) and work experience (Regs. §§ 404.1565 and .1568, 416.965 and .968). Toward that end the ALJ typically looks (and ALJ Brooks did look) to the "Grid," medical-vocational guidelines (found at 20 C.F.R. Subpart P, Appendix 2) that balance the claimant's physical limitations against the other relevant factors (Regs. §§ 404.1569, 416.-969). Before doing so the ALJ must determine what type of work a claimant is capable of performing in light of his or her impairments. Secretary's regulations define types of work using physical exertion criteria (Regs. §§ 404.1567, 416.967). Alternatively the ALJ may base the step 5 determination on other evidence, including the assessment of a vocational specialist (Regs. §§ 404.1566(e), 416.966(e)). ALJ Brooks did not use a vocational specialist here.

### 2. Pain Testimony and Credibility

■ Cummings first contends ALJ Brooks erred by discounting her testimony as to the degree of pain she was in as a result of her injuries and as to the limitations on her daily activities. Cummings' counsel invokes Section 423(d)(5)(A):

> An individual's statement as to pain ... shall not alone be conclusive evidence of disability ...; there must be medical

signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment ... which could reasonably be expected to produce the pain.

In that respect counsel commits an error common to those representing disability claimants: He treats Section 423(d)(5)(A) as *requiring* an ALJ to credit pain testimony whenever there is medical evidence of a pain-causing condition. It does nothing of the sort. Rather Section 423(d)(5)(A) *precludes* an ALJ from awarding benefits unless pain testimony is supported by medical evidence.[11] When as here such medical evidence exists, the ALJ must still evaluate the credibility of the witness, and unless such a credibility assessment is patently wrong it may not be disturbed by a reviewing court (cf. *Imani v. Heckler*, 797 F.2d 508, 512 (7th Cir.1986)). No such patent error is evident here.

### 3. "Sit–Stand Option" Limitation

Cummings says ALJ Brooks erred by applying the Grid to her condition because she is limited to jobs that have a "sit-stand option." True enough, some courts have held the Grid should not be applied when claimants are so limited. Cummings relies heavily on *Gibson v. Heckler*, 762 F.2d 1516, 1518 (11th Cir.1985) (per curiam), which defined the sit-stand option concept as invocable by a claimant who "could neither sit nor stand for more than four hours in an eight-hour work day." When a claimant is so limited, cases such as *Gibson* hold the Grid is not appropriate because most jobs require either predominantly standing or sitting, rather than allowing the worker

---

**10.** ALJ Brooks concluded Cummings' leg injuries no longer met the listing as of January 11, 1985. That conclusion is supported by substantial evidence. Cummings' physician opined that her legs had returned to full weight-bearing status as of that date, while the listing then required (as the current version still does) that the joint *not* have returned to full weight-bearing status (the listing then in effect was Reg. Part 404, Subpart P, App. 1 § 1.03).

**11.** None of the cases on which Cummings relies is to the contrary. For example, in *Sparks v. Bowen*, 807 F.2d 616, 617 (7th Cir.1986) the ALJ

found the claimant's pain testimony *was* credible, but he erroneously denied benefits because the claimant did not establish the cause of her medically-demonstrated condition. That decision in no way suggests benefits would have been awarded had the ALJ *disbelieved* the claimant. Other cited cases are simply inapposite. *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir.1984) antedated the amendments that added the language at issue here. *Green v. Schweiker*, 749 F.2d 1066, 1070 (3d Cir.1984) (per curiam) upheld an ALJ's determination of insufficient medical evidence to corroborate pain testimony.

to change position frequently at his or her option (see *id.* at 1519).

But the problem here is that ALJ Brooks did not find Cummings was limited to such jobs. Instead the ALJ found she could not stand or walk more than two hours per day, but he found no limitation on Cummings' ability to sit (R. 55–57). Those findings are certainly supported by substantial evidence in the record: They accord precisely with the opinion of Cummings' treating physician and are not contradicted by Cummings' own testimony.

### 4. Carpal Tunnel Syndrome

Cummings also says ALJ Brooks erred by applying the Grid because carpal tunnel syndrome severely limits the use of her left hand and arm. ALJ Brooks did find Cummings could not use her left arm "repetitively," but he nevertheless concluded she could perform a wide range of sedentary work (R. 56, 57).[12] Though ALJ Brooks provided examples of such jobs, Cummings notes some of those examples require use of both arms.

 When a claimant is unable to return to her prior relevant work, the burden shifts to Secretary to show there are other jobs she can perform. Here it is a close question whether that burden has been met. Clearly, given the ALJ's conclusion that Cummings' use of her left arm was restricted, the better practice would have been to obtain testimony of a vocational specialist as to the jobs available to her in light of that limitation. Still, this Court would be reluctant to hold a claimant disabled based on the ALJ's failure to consult a vocational specialist in these circumstances.

Because this case is being remanded to the Appeals Council for its consideration of the new evidence, there is no need to reverse. Rather the Appeals Council may choose to obtain the opinion of a vocational specialist if it deems that necessary on the record then before it.

12. Cummings is right-handed.

### Conclusion

Neither party has established it is entitled to a judgment as a matter of law. Both motions for summary judgment are therefore denied. But because the Appeals Council denied review without considering the new and material evidence proffered by Cummings, this case is remanded to the Appeals Council for further proceedings consistent with this opinion.