[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPT 14, 2006
THOMAS K. KAHN
CLERK

_____

No. 06-11627
Non-Argument Calendar

_____

D. C. Docket No. 03-61314-CV-KAM

BARBARA FRIES,

Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,
Jo Anne Barnhart, Commissioner,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(September 14, 2006)**

Before BLACK, BARKETT and FAY, Circuit Judges.

PER CURIAM:

Barbara Fries appeals pro se from the district court's judgment affirming the denial of her application for disability benefits pursuant to 42 U.S.C. § 405(g). On appeal, Fries argues that the Administrative Law Judge ("ALJ"): (1) abused his power and deprived her of a fair hearing by sending her a prehearing correspondence stating that he would dismiss her case unless she provided a letter stating that the record was complete; (2) failed to take reasonable measures to fairly and fully develop the medical evidence of record; (3) failed to obtain supplemental testimony from a vocational expert ("VE"), in violation of the Appeals Council's remand order; and (4) did not give proper weight to the opinions of her treating physicians. For the reasons set forth more fully below, we affirm the ALJ's decision.

Fries applied for a period of disability and disability insurance benefits in 1989. Before she was injured at work, she worked as a receptionist. The Appeals Council remanded Fries's case twice for rehearing so that the ALJ could recontact her physicians and consult an orthopedic medical expert. At Fries's administrative hearings, she testified that she was able to go shopping, watch television, visit friends, do household chores such as cooking and cleaning, drive, and travel from New York to Florida twice a year. She further testified that she was unable to sit or stand for more than 10 minutes, could walk one block, and could lift less than

2

one-half gallon of milk. Also, a VE had testified at an earlier 1997 hearing that Fries could perform her relevant past work as a receptionist because the work was sedentary.

The medical evidence in the record showed that Fries suffered from lumbar degenerative disc disease, osteoarthritic changes at L4-5, and osteoarthritis of the right knee. Salvatore F. Pisciotto, M.D., first opined that she was totally disabled, but later, he determined that she was not disabled from all work. Michael V. Marrone, M.D., found that she could perform work that did not involve excessive standing, bending, or lifting. Leonard Langman, M.D., Helen Heiman, M.D., and Barbary Colon, M.D., concluded that she was disabled. Morris Funk, M.D., concluded that she walked normally and had no limitation on the movement of her joints, and K. Seo, M.D. found that she had difficulty standing or walking for prolonged periods.

Our review of the Commissioner's decision is limited to whether substantial evidence supports the decision and whether correct legal standards were applied. Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1158-1159 (11th Cir. 2004). "Even if the evidence

preponderates against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." Id.

To establish disability, a claimant must first show that she became disabled during the time for which she was insured by Social Security. 20 C.F.R. § 404.131(a). Here, because Fries was last insured on March 31, 1995, she must show that she was disabled on or before that date.

"The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven that she is disabled." Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). The examiner must determine: (1) whether the claimant is not engaged in substantial gainful activity; if so, (2) whether the claimant has a severe impairment; if yes, (3) whether the claimant has any impairment which meets or equals those contained in a list of impairments; if not, (4) whether the claimant is unable to perform her past relevant work; if so (5) whether the claimant can perform other work. Id. At step five, the burden is on the Commissioner to show that there is other work the claimant can perform. Id.

## I. Abuse of Power Claim

Fries argues that the ALJ abused his power by threatening to dismiss her case if she did not send him a letter stating that the record was complete.

The Social Security Act requires that a claimant's hearing be both full and

4

fair. Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). "An [ALJ] shall not conduct a hearing if he or she is prejudiced or partial with respect to any party or has any interest in the matter pending for decision." 20 C.F.R. § 404.940. "The impartiality of the ALJ is thus integral to the integrity of the system." Miles, 84 F.3d at 1401. If a claimant fears that a particular ALJ will not provide a fair hearing, he must notify the ALJ at the earliest opportunity. 20 C.F.R. § 404.940.

The ALJ provided Fries with a full and fair hearing because, on remand, Fries was allowed to submit additional evidence and testimony in support of her claim. Further, Fries never requested that the ALJ recuse himself before the hearing. Finally, as discussed below, the ALJ based his opinion on the evidence in the record, and there is no evidence that his prehearing correspondence affected his decision. Accordingly, we conclude that the ALJ accorded Fries a full and fair hearing.

## II. Development of the Medical Record

Fries argues that the ALJ erred by not following the Appeals Council's order directing him to contact (1) Jeffrey Minkoff, M.D., and Marc Hammerman, M.D., who treated her knee condition; (2) Drs. Marrone and Seo; and (3) an orthopedic medical specialist.

"A hearing before an ALJ is not an adversarial proceeding" and "the ALJ

5

has a basic obligation to develop a full and fair record." Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997). Medical sources should be recontacted when the evidence received from that source is inadequate to determine whether the claimant is disabled. 20 C.F.R. §§ 404.1512(e); 416.912(e). If the medical sources do not provide sufficient medical evidence, the ALJ may order a physical or mental consultive examination at the government's expense. 20 C.F.R. § 404.1517. However, the ALJ is not required to order an examination if such an examination is not necessary in order to enable the ALJ to make a disability determination. See Wilson v. Apfel, 179 F.3d 1276, 1278 (11th Cir. 1999) (holding that additional medical testimony was unnecessary where the record was sufficient for a decision).

In evaluating whether it is necessary to remand, we are guided by "whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." Brown v. Shalala, 44 F.3d 931, 935 (11th Cir. 1995) (quotations and citations omitted). "[T]here must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [Commissioner] for further development of the record." Graham, 129 F.3d at 1423.

The ALJ's failure to recontact Drs. Minkoff and Hammerman did not prevent the development of a full and fair record because there is medical evidence

6

in the record regarding Fries's knee condition subsequent to her treatment by Drs. Minkoff and Hammerman. Dr. Seo noted that Fries walked normally into the examining room and had no difficulty standing up from the sitting position or getting on and off the examining table. Dr. Seo found that Fries suffered from chronic inflammation of the right knee, and she had difficulty standing and walking for prolonged periods because of the pain in her right knee joint. In addition, Dr. Funk found that Fries walked normally, and she had no obvious joint deformities or limitation on movements of her joints. Finally, the ALJ acknowledged Fries's knee condition when he found that she suffered from osteoarthritis of the right knee.

The ALJ's failure to recontact Drs. Marrone and Seo did not prevent the development of a full and fair record because their opinions were not vague, as they noted that Fries was capable of performing work that did not involve excessive standing, bending, or heavy lifting, but she would have difficulty standing or walking for prolonged periods. Further, the ALJ did not err in relying on their opinions because Fries's testimony was consistent with their findings, as she testified that she went shopping, watched television, walked a block or two, spent time with friends, played cards, went to movies, listened to music, and did household chores such as cooking and cleaning.

The ALJ's failure to consult an orthopedic medical expert did not prevent the development of a full and fair record because Fries presented the ALJ with sufficient and detailed medical records, including records from Drs. Seo, Funk, Marrone, Langman, Heiman, Lee, and Colon. Accordingly, the medical evidence in the record was sufficient for the ALJ to determine whether Fries was disabled.

### III. Supplemental VE Testimony

Fries argues that the ALJ improperly became his own VE when he did not obtain supplemental evidence from a VE at her last hearing. In addition, the VE's testimony at her 1997 hearing was incomplete because (1) it did not refer to Fries's past work as a clerk/typist; (2) it did not indicate whether the job of receptionist as Fries actually performed it was sedentary; and (3) the Dictionary of Occupational Titles ("DOT") section upon which the ALJ relied only related to the position of receptionist.

The claimant bears the burden of showing that she cannot return to her past relevant work. Lucas v. Sullivan, 918 F.2d 1567, 1571 (11th Cir. 1990). The claimant also has the burden to provide evidence about her work experience. 20 C.F.R. § 404.1512(c)(3). To support a conclusion that the claimant is able to return to her past relevant work, the ALJ must consider all the duties of that work and evaluate the claimant's ability to perform them in spite of her impairments.

8

Lucas, 918 F.2d at 1574. Generally, if the IJ concludes that the claimant can perform her past relevant work, VE testimony is not necessary to determine whether a claimant can perform her past relevant work. Id. at 1573 n.2. A claimant is not disabled if she is able to perform her past work either as she actually performed it or as it is generally performed in the national economy. 20 C.F.R. § 404.1560(b).

Sedentary work

involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."

20 C.F.R. § 404.1567(a).

In determining whether the claimant can work, the Commissioner can take administrative notice of job information from reliable sources such as the DOT. 20 C.F.R. §§ 404.1566(d)(1), 416.966(d)(1). The DOT uses the same classifications to describe the exertional requirements of work, such as "light" or "sedentary," as does the Commissioner when determining the claimant's RFC. Gibson v. Heckler, 762 F.2d 1516, 1519 n.2 (11th Cir. 1985). According to DOT § 237.367-038, a "receptionist (clerical)" or "reception clerk"

9

> [r]eceives callers at establishment, determines nature of business, and directs callers to destination: Obtains caller's name and arranges for appointment with person called upon.  Directs caller to destination and records name, time of call, nature of business, and person called upon. May operate PBX telephone console to receive incoming messages. May type memos, correspondence, reports, and other documents...May perform variety of clerical duties [ADMINISTRATIVE CLERK (clerical) 219.362-010] and other duties pertinent to type of establishment. May collect and distribute mail and messages.

The DOT identifies the position of receptionist as sedentary.  Id.

The ALJ did not err in concluding that Fries's past relevant work was as a receptionist, and her description of her work experience met the DOT definition of "receptionist (clerical)" because  Fries testified that she worked as a receptionist before she was injured.  Further, the ALJ did not act as his own VE because he properly considered the VE's opinion from the 1997 hearing that Fries's past work was semi-skilled and sedentary, and she could perform sedentary work as a receptionist. The ALJ also referred to the DOT and properly found that the VE's description of Fries's past work as semi-skilled and sedentary was consistent with the DOT's description of how receptionist jobs are generally performed in the national economy.  The fact that the VE did not testify whether Fries could perform the job of receptionist as she actually performed it is not determinative because a claimant is not disabled if she is able to perform her past work either as

10

she actually performed it or as it is generally performed in the national economy. See 20 C.F.R. § 404.1560. Finally, the ALJ properly concluded that he did not need to consider whether Fries could perform the position of clerk/typist because substantial evidence supports his determination that she could have worked as a receptionist before her insured status expired.

## IV. Weight Given to Medical Evidence

Fries argues that the ALJ did not properly weigh the medical evidence because (1) the ALJ discounted Dr. Pisciotto's original opinion that she was totally disabled; (2) did not give enough weight to the opinions of Drs. Langman and Lee, who found that she was disabled; and (3) gave too much weight to the opinions of Drs. Marrone and Seo, as they only examined her once, and their opinions were vague.

In determining whether a claimant is disabled for purposes of the Social Security Act, the ALJ is required to make several findings under a five-step sequential evaluation process, including an assessment of the claimant's "residual functional capacity" ("RFC") to determine whether the claimant can do her past relevant work or can make an adjustment to other work. 20 C.F.R. § 404.1520(e). The RFC assessment is based on all the relevant medical and other evidence in the case record. Id. The ALJ must state with particularity the weight given different

11

medical opinions and the reasons for the weight given, and failure to do so is reversible error.  See Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987).

The ALJ must make credibility determinations regarding a claimant's claims of pain.  Wiggins v. Schweiker, 679 F.2d 1387, 1390 (11th Cir. 1982).  We apply a three-part "pain standard" test when a claimant attempts to prove disability through her own testimony of subjective symptoms such as pain.  Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991).  "The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain [or other symptom] arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain [or other symptom]."  Id.  A claimant's subjective testimony of pain or other symptoms, when supported by objective medical evidence satisfying the requirements of the "pain standard" test, is sufficient to support a finding of disability.  Id.  If an ALJ decides to discredit such testimony, he must give "explicit and adequate reasons for doing so," and failure to provide such reasons requires that the testimony be accepted as true.  Id.

Testimony or an opinion of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary.  Lewis v.

Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). We have found "good cause" to exist where the (1) opinion was not bolstered by the evidence, (2) evidence supported a contrary finding, or (3) opinion was conclusory or inconsistent with the doctor's own medical records. Id. (internal citations omitted). The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error. Id.

Applying the pain standard, the ALJ properly considered Fries's assessment of her pain level and found that it was not credible to the degree alleged because the objective evidence, as discussed above, did not confirm the severity of Fries's alleged limitations. See Holt, 921 F.2d at 1223.

The ALJ had good cause for giving minimal weight to Dr. Pisciotto's original opinion that Fries was totally disabled because Piscotto's original opinion was inconsistent with other evidence in the record, including the opinions of Drs. Seo, Funk, and Marrone, and Fries's own description of her daily activities. Finally, the ALJ had good cause to rely on the opinions of Drs. Seo and Marrone even though they only examined Fries once because, as discussed above, Dr. Funk's findings, Fries's testimony about her daily activities, and the lack of extensive medical treatment, were consistent with their findings. Accordingly, the ALJ's findings are supported by substantial evidence, and we discern no reversible

13

error.

**AFFIRMED.**