[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-11708
Non-Argument Calendar

_____

D.C. Docket No. 1:17-cv-20201-UU

HAZEL-DAWN Y. CHATHAM,

Plaintiff - Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 18, 2019)

Before TJOFLAT, MARTIN, and JORDAN, Circuit Judges.

PER CURIAM:

Hazel-Dawn Chatham, proceeding *pro se*, appeals the District Court's grant of summary judgment for the Commissioner of the Social Security Administration ("Commissioner") in her case for judicial review of the Commissioner's decision to deny her application for a period of disability, disability insurance benefits, and supplemental security income pursuant to 42 U.S.C. § 1383(c)(3). *See* 42 U.S.C. § 405(g) (providing for judicial review in the district courts).

The Administrative Law Judge ("ALJ") found that Chatham's residual functional capacity ("RFC") allowed her to work as a telephone-information clerk, a job she has previously held. As such, the ALJ reasoned, Chatham was not "disabled" as that term is used in the Social Security Act of 1935, Pub. L. 74-271, 49 Stat. 620. *See* 42 U.S.C. § 423(d)(1)(A) (defining "disability").

Chatham's argument, distilled to its core, is that the ALJ committed procedural error in determining her RFC. First, the ALJ failed to accord proper weight to the determination of her physician, Dr. Thomas Roush, that Chatham could work no more than three hours per day. And second, the ALJ failed to articulate why she did not find Chatham's testimony on the disabling effect of her pain to be credible.[1]

---

[1] She also contends that the ALJ determined new types of work she could perform and that this determination was erroneous. The ALJ's decision, however, was based only on her current ability to perform past work.

We affirm the District Court's grant of summary judgment to the Commissioner because the ALJ committed no procedural error.  Because we write for the parties, we set out facts only as they are needed to support our analysis.

I.

We review *de novo* a district court's review of the Commissioner's disability determination.  *Ingram v. Astrue*, 496 F.3d 1253, 1260 (11th Cir. 2007).  We review *de novo* the Commissioner's legal conclusions but review her factual findings for substantial evidence.  *Id.*

As to the former, "[t]he Commissioner's failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal."  *Id.* (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991)).

As to the latter, substantial evidence is "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).   We do not "decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner."  *Winschel v. Astrue*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration omitted)).  We must, however, "view the entire record and take account of evidence in the record which detracts from the evidence relied on by the

3

[Commissioner]." *Parker v. Bowen*, 793 F.2d 1177, 1180 (11th Cir. 1986) (per

curiam) (quoting *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per

curiam) (alteration omitted)).

## II.

The ALJ employs a five-step sequential analysis to determine whether a

claimant is disabled:

> (1) whether she is engaged in "substantial gainful activity";
>
> (2) if not, whether she has a "severe impairment or combination of impairments";
>
> (3) if so, whether that impairment, or combination of impairments, meets or equals the listings in 20 C.F.R. § 404, Subpart P;
>
> (4) if not, whether she can perform her "past relevant work" in light of her RFC; and
>
> (5) if not, whether, based on her age, education, and work experience, she can perform other work found in the national economy.

*Winschel*, 631 F.3d at 1178.[2]  Before the ALJ conducts step four of the analysis,

she must determine the RFC.  The RFC is "that which an individual is still able to

do despite the limitations caused by his or her impairments."  *Phillips*, 357 F.3d at

1238.  The ALJ must "'assess and make a finding about the claimant's [RFC]

---

[2] As relevant here, a disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

based on all the relevant medical and other evidence' in the case." *Id.* (alteration omitted) (quoting 20 C.F.R. § 404.1520(e)).  A claimant bears the burden of proving disability by a preponderance of the evidence, *Gibson v. Heckler*, 762 F.2d 1516, 1518 (11th Cir. 1985) (per curiam), a burden that is "very heavy" at step four of the analysis, *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam).

We begin first with whether the ALJ erred by not giving the legally required weight to Dr. Roush's testimony.  We then turn to whether the ALJ erred by not giving legally sufficient support for her finding that Chatham was "not entirely credible."

### A.

"Absent 'good cause,' an ALJ is to give the medical opinions of treating physicians 'substantial or considerable weight.'" *Winschel*, 631 F.3d at 1179 (quoting *Lewis*, 125 F.3d at 1440).[3]

Here, the ALJ was not required to accord Dr. Roush's testimony any legally prescribed weight because Dr. Roush examined Chatham only once.  *See McSwain*

---

[3] Medical opinions are "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of the claimant's impairment(s), including the claimant's symptoms, diagnosis and prognosis, what the claimant can still do despite impairment(s), and the claimant's physical or mental restrictions." *Winschel*, 631 F.3d at 1178–79 (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2) (alterations omitted)).

*v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (stating that "one-time examiners" are not "treating physicians").

B.

A claimant may establish that she has a disability through her "own testimony of pain or other subjective symptoms." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). When a claimant attempts to establish disability in this manner, we apply a three-part "pain standard," which requires: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995) (per curiam) (observing, as to the third prong, that "pain alone can be disabling, even when its existence is unsupported by objective evidence").

The only prong at issue here is the third prong—whether the "objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson*, 284 F.3d at 1225.

The ALJ, "[a]fter considering a claimant's complaints of pain," "may reject them as not creditable." *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992). In doing so, however, the ALJ must "clearly 'articulate explicit and adequate

6

reasons' for discrediting the claimant's allegations of completely disabling symptoms." *Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67 F.3d at 1561). But the ALJ need not cite "particular phrases or formulations." *Id.* (quoting *Foote*, 67 F.3d at 1562). We require, rather, "enough to enable [us] to conclude that the ALJ considered [the claimant's] medical condition as a whole." *Id.* (quoting *Foote*, 67 F.3d at 1561 (alteration omitted)). To that end, the ALJ must consider "all evidence about the intensity, persistence, and functionally limiting effects of pain." *Foote*, 67 F.3d at 1561.[4]

The ALJ credited Chatham's testimony of "severe abdominal cramps," "pain in her gluts [*sic*] and legs," "migraine headaches," and "knee pain." Despite these observations, however, the ALJ found that Chatham's complaints of pain—supposedly severe enough to prevent her from working as a telephone-information clerk—were "not entirely credible." In reaching that conclusion, the record is clear that the ALJ considered Chatham's "medical condition as a whole," as the law requires.

---

[4] This evidence includes (1) the claimant's "daily activities," (2) the "location, duration, frequency, and intensity" of pain, (3) "[p]recipitating and aggravating factors," (4) "type, dosage, effectiveness, and side effects of any medication," (5) "[t]reatment, other than medication," (6) "measures . . . to relieve . . . pain or other symptoms," and (7) "[o]ther factors concerning. . . functional limitations and restrictions due to pain or other symptoms." 20 C.F.R. § 404.1529(c)(3).

First, the ALJ considered Dr. Roush's testimony—in particular, his opinion that Chatham could not work more than a three-hour workday—but found that his opinion was undermined by other medical evidence.  The record indicates that Dr. Roush's opinion was undermined, first and foremost, by his own determination on the medical-source statement that Chatham could alternate between sitting, standing, and walking for the remaining five hours of the workday.  Chatham herself testified that she could sit for a total of five hours over the course of the workday, and Dr. Sunita Patel placed this number at six hours.  Dr. Robert Jaeger, moreover, after performing a physical examination on Chatham, indicated that despite a "history of lower back and neck problems with arthritis," she had a "[n]ormal range of motion of the shoulders, elbows, and wrists with 5/5 strength" as well as a gait "within normal limits."

Second, the ALJ observed that Chatham could "bathe, groom, dress, and feed herself on a daily basis."  She could also "cook using the stove, make her bed, and use public transportation to get to and from where she needs to go."  *Cf.* 20 C.F.R. § 404.1529(c)(3)(i) (stating that "daily activities" are a relevant factor).  Though a claimant's testimony on her daily tasks cannot alone support a finding on the third *Wilson v. Barnhart* prong, Chatham cites no evidence of daily tasks that she struggled with, and in any event, the ALJ did not support her decision only with this testimony.  *Cf. Foote*, 67 F.3d at 1561 (holding that the record lacked

substantial evidence to support the RFC determination when despite evidence that the claimant could cook and shop, "there was other testimony indicating that [her] daily activities," e.g., putting on her bra, had been "significantly affected").

And third, the ALJ found that Chatham's degenerative disc disease had "only recently progressed to this level of severity." *Cf.* 20 C.F.R. § 404.1529(c)(3)(ii) (stating that "duration" and "intensity" of pain are relevant factors). The ALJ also found that Chatham's treatment to date was "conservative" and that "more aggressive treatment will hopefully improve her condition." *Id.* § 404.1529(c)(3)(v) (stating that "treatment" is a relevant factor); *see also Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996) (holding that substantial evidence supported the ALJ's decision in part because the claimant's to-date treatments were "conservative in nature").

In short, the ALJ did not commit legal error in finding that Chatham was not credible because the opinion is clear that she considered the "medical condition as a whole."

### III.

The District Court's order granting summary judgment for the Commissioner is **AFFIRMED.**

**SO ORDERED.**