**Victoria D'AGOSTINO, Plaintiff,**

**v.**

**Otis BOWEN, M.D., Defendant.**

**No. 86 C 1369.**

United States District Court,
N.D. Illinois, E.D.

Aug. 25, 1988.

---

Selwyn Coleman, Roselle, Ill., for plaintiff.

Anton R. Valukas, U.S. Atty., Mary S. Rigdon, Asst. U.S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Victoria D'Agostino ("D'Agostino") appeals from the final decision of the Secretary of Health and Human Services ("Secretary") denying her claim for disability insurance under Social Security Act ("Act") §§ 216(i) and 223, 42 U.S.C. §§ 416(i) and 423.[1] As invariably occurs in these actions, the parties have filed cross-motions for summary judgment. For the reasons stated in this memorandum opinion and order D'Agostino's motion is denied, Secretary's is granted and this action is dismissed.

### Procedural History

D'Agostino applied for benefits under the Act February 21, 1985. When that application was denied she waived a hearing before an Administrative Law Judge ("ALJ"), choosing instead to have her claim decided on the evidence in the record. On September 23, 1985 ALJ William Sheridan ("ALJ Sheridan") issued a written opinion denying D'Agostino benefits. She sought review from the Appeals Council, submitting additional medical evidence in support of her claim. Although the Appeals Council denied review, it discussed that additional evidence. D'Agostino then brought this action under Section 405(g).

This Court determined in the "Opinion," 648 F.Supp. 794 (1986) that ALJ Sheridan's denial of benefits was not supported by substantial evidence in the record as a whole once the additional evidence presented to the Appeals Council was considered. Opinion, *id.* at 802 & n. 5 therefore remanded the case to Secretary and directed the ALJ to consider the additional evidence, conducting a hearing if necessary.

On remand the claim was assigned to ALJ John Mondi ("ALJ Mondi"), who conducted a June 22, 1987 hearing (the "Hearing") at which D'Agostino (represented by counsel) appeared. ALJ Mondi also heard evidence from consulting physician Dr. Harold Feinhandler and vocational expert Susan Entenberg ("Entenberg").

On July 22, 1987 ALJ Mondi issued a carefully considered decision recommending the denial of benefits to D'Agostino. On October 28, 1987 the Appeals Council adopted that recommended decision,[2] which then became Secretary's final decision. D'Agostino's claim was automatically returned to this Court (see Section 405(g)).

### Facts

Opinion, 648 F.Supp. at 795–98 provides a detailed description of the then-existing record evidence, which bears repetition only in extremely abbreviated form. In January 1984 D'Agostino was 55 and working as a statistical clerk for an insurance company when she suffered a detached retina in her right eye. She had also worked as an assistant school librarian and a bank teller during the relevant period. Surgery repaired the retina successfully, and D'Agostino now has vision within normal ranges in both eyes. She returned to work for only a short time after the surgery, leaving because reading (a necessary part of her job) caused pain in her eye. She claims that pain is disabling.

During the Hearing ALJ Mondi questioned D'Agostino as to the extent of her

---

1. All further citations to sections of the Act will take the form "Section—," referring to the Title 42 numbering rather than to the Act's internal numbering. Regulations drawn from 20 C.F.R. will be cited simply as "Reg. § —."

2. One factual finding in ALJ Mondi's opinion was modified also to reflect D'Agostino's prior work preceding her most recent job (R. 92), but that modification has no effect on the issues presented here. Each of the jobs presented the same problem (and called for the same answer) in terms of D'Agostino's continued ability to perform them.

limitations due to her eye pain. She testified she was unable to read (R. 119), to lift objects over 10 pounds (R. 121) or to bend or stoop frequently (*id.*) because she suffered pain as a result of the attendant motion of, or shock to, the eye. She is able to do light housework (R. 123) and watch television (R. 119, 124) without aggravating the pain. Under questioning by her counsel, D'Agostino said when the pain became severe she would lie down with a compress for 30 to 45 minutes and obtain relief (R. 124). Dr. Feinhandler also questioned D'Agostino before he testified. She told him that when the compresses failed to work she would take a single aspirin and obtain relief (R. 127).

Dr. Feinhandler then testified that based on his review of D'Agostino's record there were no objective signs to explain her discomfort (R. 129). He noted that severe pain could result from surgery for a detached retina, but that the pain would be associated with restricted eye movement, and D'Agostino's records showed no such restrictions (*id.*). Under cross-examination Dr. Feinhandler insisted the wrinkling of D'Agostino's retina noted by her physician could not be a cause of the pain (R. 132).

Entenberg testified in response to hypothetical questions posed by ALJ Mondi. She said a person of D'Agostino's age and education and with her slight visual limitation could return to her past relevant work (R. 137). However, Entenberg also opined that if such a person also had pain limiting her to reading 10 or 15 minutes at a time (but no exertional limitations) she would be limited to unskilled work not requiring close activity (R. 37–38). Finally, Entenberg said that if that same person also had

to avoid jarring to the eyes she would be restricted to sedentary work not requiring close work, and those jobs do not exist in significant numbers (R. 139).

ALJ Mondi's decision first recited the familiar five-step procedure used by Secretary in assessing disability claims (see Reg. § 404.1520).[3] He then provided a detailed review of both the medical record and the Hearing evidence. Next he correctly found D'Agostino met the insured status requirements and was not working. ALJ Mondi then decided D'Agostino's visual impairments did not meet the listings of Subpart P Appendix 1 (R. 102), a conclusion D'Agostino does not challenge.

That brought matters to step 4 (see n. 3), where the issue is whether D'Agostino is capable of performing work she has done in the past. If so, she is not disabled and there is no need to proceed to step 5 (ability to perform other work). ALJ Mondi made three related factual determinations:

1. D'Agostino's subjective complaints of pain were not supported by objective medical evidence (R. 101, 102).

2. Those subjective complaints were not credible because (a) they were out of proportion to the objective evidence and (b) they were contradicted by her own testimony as to how she relieved the pain (*id.*).

3. D'Agostino had the residual functional capacity to perform work that did not require (a) lifting over 20 pounds, (b) jarring or jolting of the head or (c) prolonged fine vision.

Because D'Agostino's past relevant work did not violate any of those limitations, ALJ Mondi concluded she was not disabled.

3. *Garfield v. Schweiker,* 732 F.2d 605, 607 n. 2 (7th Cir.1984) summarizes that process:

The following steps are addressed in order. (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments [Subpart P, Appendix 1]? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding the claimant is disabled. A negative answer at any point, other than step

3, stops the inquiry and leads to a determination that the claimant is not disabled.
ALJ Mondi did not apply step 2 of this process because of our Court of Appeals' decision in *Johnson v. Heckler,* 769 F.2d 1202, 1209–13 (7th Cir.1985) invalidating that step. As it happens, *Johnson* had been vacated less than a week before the Hearing — U.S. —, (107 S.Ct. 3202, 96 L.Ed.2d 690) in light of the decision in *Bowen v. Yuckert,* — U.S. —, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987) upholding the validity of step 2. Because this opinion concludes benefits were correctly denied at step 4, the omission of step 2 is immaterial.

*Review of Secretary's Decision*

This Court's authority to review Secretary's disability determinations is both granted and constrained by Section 405(g), which says in part:

The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.

This Court must limit itself to determining whether substantial evidence supports Secretary's factual determinations. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938), defines substantial evidence as:

more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

If an ALJ's factual conclusions are supported by substantial evidence and the ALJ applies the proper legal standards to those conclusions, Secretary's decision must be upheld (*Reynolds v. Bowen*, 844 F.2d 451, 455–56 (7th Cir.1988)).

■ ALJ Mondi's conclusion that D'Agostino's complaints of pain are not supported by objective evidence of a medical condition likely to cause pain is clearly supported by substantial evidence. Dr. Feinhandler testified there was no indication of a medical condition likely to cause pain. True enough, he had reviewed D'Agostino's charts rather than examining her directly, so his views might be entitled to less evidentiary weight than otherwise. But the evidence from doctors who did examine D'Agostino is not directly to the contrary.

Dr. Anthony Finder, who examined D'Agostino for a private disability insurance claim, found no objective support for finding her disabled in those terms (R. 86–87).[4] Dr. Charles Vygantas was at one time D'Agostino's treating physician,[5] so

his views are entitled to substantial though not preclusive weight (*Reynolds*, 844 F.2d at 454–55). Dr. Vygantas noted "scar tissue formation and a tightness around the ocular tissues and muscles." He said eye or body movement could thus result in "pain discomfort." He recommended that D'Agostino avoid physical activity that could jar the eyes, heavy lifting or running and noted her discomfort would be "aggravated by any prolonged reading, scanning of detailed material as may be on a monitor or evaluating fine detailed print" (R. 84, 85). In sum, while Dr. Vygantas found objective evidence of a medical condition that could cause some pain, he did not say D'Agostino's condition would likely cause pain of disabling intensity. Even had his conclusion been stronger, ALJ Mondi would have been justified in crediting Dr. Feinhandler's testimony over the letter from Dr. Vygantas. Resolution of conflicting evidence is the responsibility of the ALJ (*Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir.1985), quoted and followed in *Reynolds*, 844 F.2d at 454).

It must be concluded that the ALJ's factual determination that there was no objective medical evidence of a condition likely to cause pain is supported by substantial evidence in the record as a whole. That factual determination dooms D'Agostino's claim. Section 423(d)(5)(A) says in part (emphasis added):

An individual's statement as to pain ...shall not alone be conclusive evidence of disability ...; there *must* be medical signs and findings ...which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain.

In the absence of such medical signs and findings, ALJ Mondi could not conclude D'Agostino suffered from disabling pain.[6]

---

**4.** See Appendix.

**5.** Dr. Vygantas' latest report is his March 1985 letter to the insurance company, which contributed to the remand (see Opinion, 648 F.Supp. at 800). At the Hearing D'Agostino said she now sees a Dr. Stiller (R. 119) (or perhaps it is

Stoller (R. 122)), but the record contains no report from that current treating physician.

**6.** Reg. § 404.1529 is to similar effect:

We will never find that you are disabled based on your symptoms, including pain, unless medical signs or findings show that there

Of the various hypothetical questions he posed to Entenberg, only the first described her situation—and in response to that question Entenberg opined D'Agostino could return to her past work. ALJ Mondi's ultimate conclusion that D'Agostino is not disabled is therefore supported by substantial evidence and must be affirmed.

■ ALJ Mondi's recommended decision also provides an alternate route to affirmance. Even if there *were* medical evidence of a pain-causing condition, he did not have to credit D'Agostino's testimony as to the degree of pain (*Cummings v. Bowen,* 677 F.Supp. 975, 981 (N.D.Ill.1988)). Here ALJ Mondi specifically found D'Agostino's subjective complaints as to the degree of her pain were not credible, and he gave legitimate reasons for that finding: the tenuous medical support and the ease with which she could relieve the pain. That conclusion is not patently erroneous and must be affirmed (*Walker v. Bowen,* 834 F.2d 635, 641 (7th Cir.1987)).

■ Thus the denial of benefits is supported on two independent grounds. Yet D'Agostino makes one final argument, which may be dealt with briefly. She asks the Court to take what her counsel styles as a "common sense" approach to assessing disability—an approach that basically asks whether an employer would be likely to hire D'Agostino given her age, education and medical condition. But as this Court has already observed in the first round of this case, that is not the inquiry (Opinion, 648 F.Supp. at 798):

> Thus Secretary must ignore existing economic conditions and actual hiring practices—even though those factors might diminish the claimant's real job prospects—and focus solely on the claimant's physical and mental ability to perform jobs that exist in the national economy.

This opinion has already concluded that ALJ Mondi correctly made that determination. This Court is not free to jettison the body of law defining "disability" in favor of its own (or counsel's) idiosyncratic "common sense" assessment.

is a medical condition that could reasonably

*Conclusion*

There is no genuine dispute as to any issue of material fact. Secretary has shown he is entitled to a judgment as a matter of law. Secretary's motion is granted and D'Agostino's is denied. This action is dismissed.

APPENDIX

Because both D'Agostino and Secretary seek to rely on Dr. Finder's opinion based on mistaken premises, a somewhat extended explanation is necessary. Dr. Finder wrote his report in response to specific questions posed by the disability insurance company's Claims Specialist. Those questions are not in the record, but they were presumably geared to the insurance policy's "disability" definition, rather than that of the Act. Certainly the questions posed to Dr. Finder were (understandably) not those that speak to the controlling considerations under the Act. For that reason Dr. Finder's conclusions as to "disability" (as opposed to his medical observations) carry little weight in support of the ALJ's ultimate conclusion. However, nothing in Dr. Finder's report contradicts Dr. Feinhandler's opinion.

While the difference in definitions of "disability" simply undercuts reliance by Secretary on Dr. Finder's ultimate opinion, it is devastating to D'Agostino's reliance on the following lines of Dr. Finder's letter (R. 87–88):

> I must add however that there is no way to objectively measure pain and that pain is often not accompanied by objectively observable signs. I cannot comment on the validity of disregarding subjective symptoms in the determination of disability for insurance purposes, but in a common-sense approach, this lady is presently disabled.

Plainly Dr. Finder's "common-sense approach" to disabling pain is directly contradictory to the requirements of the Act and the Regulations discussed in the text. While subjective complaints of pain must be considered, for Act-defined "disability"

be expected to produce those symptoms.

there must also be objective evidence of a pain-causing condition. Dr. Finder does not say whether he found such evidence.

Given that impermissible approach, Dr. Finder's conclusion carries no evidentiary weight. On the other hand, Dr. Feinhandler addressed the Act's relevant question directly and, based on Dr. Finder's medical observations, answered in the negative.