Lawrence **LANDRY**, Plaintiff-Appellant,

v.

Margaret M. **HECKLER**, as Secretary of Health & Human Services, Defendant-Appellee.

No. 85–3059.

United States Court of Appeals, Eleventh Circuit.

Feb. 27, 1986.

Emily W. Lawyer, Tampa, Fla., for plaintiff-appellant.

Haila N.K. Coleman, Regional Atty Office, Health & Human Services, Atlanta, Ga., for defendant-appellee.

Before GODBOLD, Chief Judge, KRAVITCH, Circuit Judge, and SIMPSON, Senior Circuit Judge.

PER CURIAM:

Landry appeals from the district court's judgment affirming the determination of the Secretary that he is not entitled to social security disability benefits because he is able to do light work as defined by 20 C.F.R. § 404.1567(b). Because the factual findings made by the Administrative Law Judge (ALJ) and adopted by the Secretary are supported by substantial evidence in the record and because these findings do

not entitle Landry to disability benefits under the appropriate legal standard, we affirm.

Landry worked as a truck driver until February 1982. He asserts that he suffers from disabling pain in his arms and hands that has prevented him from performing substantial gainful employment since February 15, 1982. The following evidence was adduced at the hearing before the ALJ.[1] In July 1980 Landry began receiving treatment for high blood pressure from Dr. Carduso. Although Dr. Carduso prescribed medication to reduce Landry's blood pressure, his office notes indicate that Landry failed to take his medicine on a regular basis. The doctor told Landry that only by complying with his direction could he lower his blood pressure.

In October 1981 Landry was hospitalized by Dr. Jannoun, claiming to be suffering from acute chest pain, hypertension, and the effects of a myocardial infarction that he had suffered the previous year. He had not been taking any medication when he checked in the hospital. Landry's stay in the hospital was short lived. Ignoring his doctor's advice, he checked out of the hospital after only one day. The diagnosis then made was acute chest pain, etiology undetermined, and hypertensive cardiovascular disease. Approximately four months after this visit Landry quit his job as a truck driver.

The next medical evidence presented was an evaluation performed in February 1983 by Dr. Azmitia, a family practitioner. Landry complained to him of frequent chest and left arm pain that at time lasted for hours and made it impossible to perform any strenuous activity. This pain was relieved at times by nitroglycerin. Dr. Azmitia performed an EKG, which showed evidence of a healed, old, myocardial infarction. There were no ischemic changes. His final diagnosis was hypertensive vascular disease, healed inferior myocardial in-

farction with a history of angina pectoris, and moderate chronic obstructive lung disease. Dr. Azmitia did not perform a stress test.

The final medical evidence was an evaluation performed by Dr. Murtha. He noted that Landry had a history of myocardial infarction but stated that this could not be documented because Landry had signed himself out of the hospital against medical advice. Dr. Murtha gave Landry a stress test that was terminated secondary to fatigue. Landry did not complain of arm and hand pain during the exercise but did so during the recovery period. Throughout the test Landry's blood pressure responded normally. Dr. Murtha also performed an EKG that revealed evidence of inferior and possibly anterior scars but otherwise was unremarkable. Dr. Murtha's final assessment was:

> Atherosclerotic heart disease, status-port inferior wall myocardial infarction by history; atypical history for angina and negative exercise tolerance test to approximately 90 percent of predicted maximal heart rate that lended little credence to the claimant's arm and hand pain coming from coronary insufficiency.

The ALJ made the analysis delineated in 20 C.F.R. § 404.1520. He first found that Landry was not working. He then concluded that Landry does suffer from "severe" pain, but that his impairment does not meet or equal a listed impairment in Appendix 1. He also found that '[t]he claimant's allegations of disability are not supported by the clinical and diagnostic evidence of record." (Finding of Fact # 4). Moving to the next step, he held that Landry's impairment prevented him from doing his previous work as a truck driver. Finally, he denied the claim because he found that Landry could perform light work.

Landry raises two issues on appeal: that the ALJ applied an inappropriate legal

1. Landry also introduced evidence of surgery to remove a carcinoma of the lower lip. An application for benefits based on this surgery and a history of high blood pressure was made in June of 1977. This application was denied at administrative levels and no appeal was taken. No complications resulted from this surgery, and there is no assertion that Landry's present problems are in any way related to it.

standard in assessing his subjective complaints of pain and erred in refusing to let three lay witnesses testify as to the severity of his pain.

## I. The appropriate legal standard

Landry argues that the district court erred in affirming the Secretary's rejection of his benefit claim because the Secretary failed to give appropriate weight to his testimony about the level of the pain that he was experiencing. This argument had support in decisions of this court made before the adoption of the Social Security Disability Benefits Reform Act of 1984. Pub.L. No. 98–460, 98 Stat. 1794 (October 9, 1984). We had held that subjective complaints of pain, if credited, standing alone could sustain a finding of disability in some cases. *See, e.g., Boyd v. Heckler,* 704 F.2d 1207, 1210–11 (11th Cir.1983); *Simpson v. Schweiker,* 691 F.2d 966, 970 (11th Cir. 1982); *Smith v. Schweiker,* 646 F.2d 1075, 1082 (5th Cir.1981) (Unit A); *Gualtney v. Weinberger,* 505 F.2d 943 (5th Cir.1974). The 1984 Act, however, established a new and temporary statutory standard for evaluating subjective evidence of pain. Section 3(a)(1) of the Act, 42 U.S.C. § 423(d)(5)(A) provides:

> An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a con-

clusion that the individual is under a disability. Objective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether an individual is under a disability.

■ The court has addressed the implications of this new standard in *Hand v. Heckler,* 761 F.2d 1545 (11th Cir.1985). There we noted legislative history that pointed out that the new standard required evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. *Id.* at 1548. We held in *Hand* that whether objective medical impairments could reasonably be expected to produce the pain complained of is a question of fact which, like all factfindings by the Secretary, is subject to review in the courts to see if it is supported by substantial evidence.

The new standard must be applied in this case. Although the ALJ made his decision January 24, 1984 and the Appeals Council decision was May 19, 1984, and the new Act did not take effect until later in 1984, a review of the legislative history leaves no doubt that Congress intended the new law to apply to a case like this one. The House Report unequivocally states "these provisions will apply only with respect to cases involving disability determinations pending in HHS or *in court* on or after the date of enactment." H.R.Rep. 98–618, 98th Cong., 2d Sess. 5 (1984) (emphasis added), U.S. Code Cong. & Admin.News 1984, pp. 3038, 3042. *See also,* H.Conf.Rep. 98–1039, 98th Cong., 2d Sess. 24 (1984) (same). Thus, we are required to apply the new law.

■ Although neither the ALJ nor the Secretary had the benefit of the new law,

the ALJ's findings of fact, which were adopted by the Secretary, leave no doubt as to the appropriate result under the new law. The ALJ found that "the medical evidence establishes that [Landry] has severe chest pain, atypical; hypertension without evidence of end-organ damage." This finding is sufficient to satisfy the first prong of the new standard. Other findings, however, indicate that Landry cannot meet the second prong. The ALJ explicitly found that Landry's "allegations of disability are not supported by the clinical and diagnostic evidence of record." (Finding of Fact # 4). Thus if the factual findings are supported by substantial evidence in the record, the denial of Landry's claim must be affirmed.

The evidence presented at the hearing, as summarized above, was in conflict as to the extent of Landry's impairment. Dr. Azmitia's evaluation, even though he performed no stress test, lends some credence to Landry's assertion that he is suffering disabling pain. Dr. Murtha's conclusion, on the other hand, was that Landry's medical impairment could not cause the severe pain complained of. As we noted in *Hand,* "choosing between conflicting evidence is a task particularly suited to the fact finder, and we will not disturb such a determination on appeal." *Id.* at 1549 n. 6. Thus, the factual findings of the ALJ must stand.

### II. The refusal to allow lay witness testimony

At the hearing before the ALJ, Landry wished to introduce the testimony of three lay witnesses, his wife and two of his friends, who were prepared to testify to the extent of Landry's pain. The ALJ refused to hear their testimony. It is clear from our discussion above that the testimony of these witnesses would have been irrelevant to the Secretary's final decision. Because Landry's claim fails for want of sufficient medical evidence, his assertion that he should have been allowed to produce lay testimony is mooted.

AFFIRMED.