**Scott McROBERTS, Plaintiff–Appellee,**

**v.**

**Otis BOWEN, Secretary of Health and Human Services, Defendant–Appellant.**

**No. 87–3014.**

United States Court of Appeals, Eleventh Circuit.

April 5, 1988.

---

Peter B. Loewenberg, Asst. U.S. Atty., Tampa, Fla., Cheryl Nikonovich–Kahn, U.S. Dept. of Health and Human Services, Atlanta, Ga., for defendant-appellant.

J. Christopher Deem, Tampa, Fla., for plaintiff-appellee.

Before VANCE and HATCHETT, Circuit Judges, and O'KELLEY *, District Judge.

HATCHETT, Circuit Judge:

In this social security disability case, we affirm the district court's ruling that substantial evidence does not support the Secretary of Health and Human Services' (Secretary) finding of no disability.

## FACTS

At the time of the administrative hearing, Scott McRoberts, the appellee, was twenty-eight years old. He completed eleven years of formal education, obtained a G.E.D., and worked as a cosmetologist, dishwasher, cabinet maker, security guard, and carpenter.

In April, 1982, McRoberts injured his neck, back, and knees in an automobile accident. Three weeks later, his knees weakened underneath him, and he fell through a sliding glass door, sustaining injuries to his right knee, deep lacerations of the nose, and lower extremities.

Because of his injuries, in May, 1982, December, 1982, and February, 1983, McRoberts underwent three surgical procedures to his knees and physical therapy. Dr. Fishalow, the treating physician, performed arthroscopic patellar shaving and partial synovectomy of the right knee. This procedure required excision of the lining of the capsule of the knee joint. Three

---

* Honorable William C. O'Kelley, U.S. District Judge, for the Northern District of Georgia, sitting by designation.

months later, he underwent arthroscopic patellar shaving of the left knee.

In August, 1983, McRoberts returned to work as a maintenance worker for three months. He later worked as a security guard at a marina for six months. He was unable to continue these positions because of chronic pain, primarily in the right knee. All of these events occurred before McRoberts's disability onset date of August, 1984.

McRoberts continued to complain to his physicians about pain in his knees. McRoberts consulted Dr. Lawrence Gnage, an orthopedic surgeon, in an attempt to alleviate the pain. Dr. Gnage diagnosed patellofemoral degenerative joint disease with severe medialis atrophy of the right knee. On March 14, 1985, Dr. Gnage performed a maquet osteotomy (surgical cutting of the bone) of the proximal tibial tubercle. Essentially, this surgery was performed in an attempt to alleviate stress on the patella. The surgery did not restore McRoberts's medialis function. Dr. Gnage stated that the muscle had completely atrophied.

Although the post-operative prognosis looked promising, McRoberts continued to report discomfort in the right knee. In July, 1985, he saw another orthopedic surgeon, Dr. D.J. O'Conner. McRoberts stated that he had severe constant pain in both knees and felt that his surgeries had worsened rather than improved his situation. Dr. O'Conner summarized his findings by stating that McRoberts "has sustained injuries to both lower extremities and has developed chondromalacia in both knees and has considerable arthritis in his right knee, to a lesser extent, also in the left knee." Dr. O'Conner noted that McRoberts could not perform a job which would require prolonged standing or walking, nor could he do any climbing, kneeling, or squatting.

During the next two months, McRoberts visited Dr. Harry Goldsmith, a clinical psychologist and Dr. Edward Feldman, an orthopedic surgeon. Dr. Goldsmith found that McRoberts was complaining primarily of pain and that he was not the type of person who would be likely to exaggerate his pain. Dr. Goldsmith also determined that in trainability (ability to learn by being shown what to do), McRoberts surpassed 93–percent of the general adult population. After an orthopedic examination, Dr. Feldman concluded that McRoberts had early signs of degenerative osteoarthritis, a permanent and progressive condition, and recommended that McRoberts be retrained to perform a sitting job.

## PROCEDURAL HISTORY

The Secretary of Health and Human Services (Secretary) denied McRoberts social security disability benefits on the ground that he was not disabled as required by the Social Security Act (the Act) at 42 U.S.C. § 423(d)(1)(A). After his claims were denied, McRoberts requested a hearing before an administrative law judge (ALJ). The ALJ denied McRoberts's application for disability benefits, and the Appeals Council of the Department of Health and Human Services affirmed. This denial became the final decision of the Secretary.

McRoberts timely appealed to the United States District Court; the district court reversed the Secretary's denial of benefits. The Secretary brings this appeal contending that the district court applied an improper standard of review.

The ALJ denied McRoberts's application, finding that although McRoberts suffered from a severe impairment, the impairment was not of such severity that it qualified for a finding of disability. Further, the ALJ found that McRoberts could not perform his past relevant work, because he was not capable of prolonged standing, walking, climbing, kneeling, or squatting. Nevertheless, the ALJ determined that McRoberts was capable of engaging in sedentary work, pursuant to 20 C.F.R. § 404.1567 (1986).[1] The ALJ concluded that based upon McRoberts's age, education, past relevant work, and residual functional capacity, he was not disabled

---

1. Sedentary work is defined as lifting no more than ten pounds at a time and occasionally lifting or carrying files or small tools. Although a sedentary job involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.

within the meaning of the Act at any time before the date of the decision.

In reversing, the district court found that McRoberts's allegations regarding chronic pain and his inability to adapt to other jobs was supported by both medical records and testing performed by several physicians.

The two issues are: (1) whether the district court applied an improper legal standard, and (2) whether the Secretary's finding is supported by substantial evidence.

We review the Secretary's findings to determine whether they are supported by substantial evidence in the record as a whole. *Richardson v. Perales*, 402 U.S. 389, 390, 401, 91 S.Ct. 1420, 1422, 1427, 28 L.Ed.2d 842 (1971); *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir.1983). Substantial evidence is "more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982). Although the decision of the ALJ need not be supported by a preponderance of the evidence, "it cannot stand with a mere scintilla of support." *Hillsman v. Bowen*, 804 F.2d 1179, 1181 (11th Cir.1986).

In this case, the first question is whether the district court applied the proper test. The district court initially set forth the proper standard of review by stating "[t]his court's review of the decision of the Secretary is limited to a determination of whether or not the findings of the Secretary are supported by substantial evidence." This states the proper standard. After a restatement of the Secretary's evidence, the district court stated that "substantial evidence supported a finding that McRoberts was totally disabled." If this is another attempted statement of the standard—it is wrong.

■ Although the district court's order does not contain express language that the Secretary's decision was not supported by substantial evidence, the order does indicate that the Secretary failed to evaluate this claim under the legal standards set forth by this court. This court is per-

suaded by the district court's initial recitation of the proper test. Because the district court, experienced in these matters, articulated the correct standard of review initially, we must assume that the district court knew the proper standard and weighed the evidence properly. Even were we to agree that the district court applied the wrong standard, on this record, we conclude that substantial evidence does not support the Secretary's decision.

Although the Secretary recognized that McRoberts's condition could contribute to pain, the Secretary gave considerable weight to Dr. Feldman's and Dr. O'Conner's recommendation that McRoberts be retrained for a sedentary position or sitting job, thus implying that his pain does not inhibit his capacity to work. In *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986), this court applied a new congressional standard for the evaluation of subjective evidence of pain. Social Security Disability Benefits Reform Act of 1984, Pub.L. No. 98–460, 98 Stat. 1794, 1799 (1984). The Secretary must consider a claimant's testimony of pain if he finds

> an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain.

*Landry*, 782 F.2d at 1553 (citing *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985)).

■ In this case, the ALJ concluded that McRoberts's pain was not so severe that it hindered his ability to perform sedentary work. Nevertheless, McRoberts testified on direct examination that he terminated his employment because of extreme difficulty functioning on the job. McRoberts stated that he experiences pain from sitting, walking, and standing. He added that by sitting for a period of time, he tends to cramp up and have difficulty in moving. The record is replete with findings from various physicians that McRoberts suffers from pain as a consequence of his injuries. The medical evidence estab-

lishes that McRoberts has severe chondromalacia in both knees with degenerative arthritis and muscle atrophy. Dr. O'Conner, Dr. Feldman, and Dr. Goldsmith all argue that McRoberts's injury imposes an additional nonexertional restriction on his ability to work. Dr. Goldsmith, the psychologist, reported that McRoberts can withstand great discomfort and does not exaggerate his pain. The Secretary must consider a claimant's subjective testimony of pain if objective evidence confirms the severity of the alleged pain arising from that condition. *Landry,* 782 F.2d at 1548. Clearly, the *Landry* requirements are met in this case. McRoberts testified that he experiences pain as a result of his injury and has difficulty in sitting for an extended period of time. Also, Dr. Goldsmith offered objective evidence confirming that McRoberts's pain exists. The medical evidence reveals the residual effect of three knee surgeries as well as arthritis and muscle atrophy. This creates a severe impairment which prevents McRoberts's ability to perform even sedentary work at a significantly gainful level.

A general finding that a claimant is able to perform the requirements of sedentary work activity is insufficient to demonstrate that the Secretary has met his burden of showing that claimant retains residual capacity to work. *Cowart v. Schweiker,* 662 F.2d 731, 736 (11th Cir.1981).

■ We also find that the Secretary's use of Medical Vocational Guidelines (the grids) located at 20 C.F.R. Part 404, Subpart P, App. 2 (1986) was improper. The grids are a series of regulations which, based upon factors of age, education, work experience, and residual functional capacity, compel a determination of whether the claimant is or is not disabled. In *Gibson v. Heckler,* 762 F.2d 1516 (11th Cir.1985), this court held that grids should not be applied when the variables used did not take into account the claimant's particular limitations. *Gibson,* 762 F.2d at 1521. The

grids are not appropriate when exertional limitations are not considered. The court in *Gibson* found that although the ALJ found claimant had the exertional capacity to perform some sedentary work, the grid rules did not take into account claimant's limitations in performing such work.[2]

In this case, the ALJ applied grid rules 201.24–201.26 to determine the existence of jobs in the national economy. As in *Gibson,* however, the grids do not consider McRoberts's individual limitations. McRoberts has problems sitting and standing for a prolonged period of time because of chronic pain. Indeed, the regulations recognize that claimants may possess limitations not factored into the guidelines and provide that the rules are inapplicable unless they describe the limitations accurately. *Gibson,* 762 F.2d at 1520 (citing *Heckler v. Campbell,* 461 U.S. 458, 462 n. 5, 103 S.Ct. 1952, 1955 n. 5, 76 L.Ed.2d 66 (1983)). The ALJ applied a mechanical approach to the regulations without taking into consideration that claimant's condition does not fully coincide with the rules. The language of the ALJ's opinion indicates that the ALJ felt bound by grids to render a finding of "not disabled." Clearly, a claimant's limitations that are not factored within a given residual functional capacity render the grids inapplicable. *Gibson,* 762 F.2d at 1520–21.

In reviewing McRoberts's testimony regarding pain, the ALJ noted that McRoberts did not take his medication on a regular basis and did not appear in pain at the hearing. McRoberts indicated that his medicine is an addictive narcotic drug and that his physician advised conservative use. Also, the ALJ improperly commented that McRoberts did not appear in pain. This court has held that "sit and squirm" jurisprudence has no place in this circuit. *See Johns v. Bowen,* 821 F.2d 551, 557 (11th Cir.1987).

Accordingly, because we find the district court applied the proper test, and because

---

**2.** The claimant's nonexertional impairment in *Gibson* was pain associated with chronic back problems. The claimant could not sit or stand for more than four hours in a work day. The

vocational expert noted that given these limitations, claimant's access to the open market will be severely restricted.

the Secretary's decision lacks substantial evidence, we affirm.

AFFIRMED.