[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

**U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 5, 2005
THOMAS  K. KAHN
CLERK**

No. 04-15285
Non-Argument Calendar

D.C. Docket No. 02-00797-CV-W

PATSY GIBBS,
o/b/o Jeremy Barris,

Plaintiff-Appellant,

versus

JO ANNE B. BARNHART, Commissioner of Social Security,

Defendant-Appellee.

_____

Appeal from the United States District Court for the
Middle District of Alabama

_____

**(May 5, 2005)**

Before BIRCH, CARNES and MARCUS, Circuit Judges.

PER CURIAM:

Patsy Gibbs, on behalf of her minor grandson Jeremy Barris, appeals the magistrate judge's final order affirming the Commissioner's denial of Barris's application for supplemental security income benefits per 42 U.S.C. § 1383(c)(3). Because substantial evidence supported the administrative law judge's ("ALJ") conclusion that Barris did not did not meet or equal the requirements of 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 112.05D for mental retardation, we **AFFIRM.**

## I.  BACKGROUND

In February 1996, Patsy Gibbs applied for supplemental security income benefits ("SSI") on behalf of her minor grandson, Jeremy Barris, alleging that Barris was disabled on the date of his birth, 13 June 1989, based on hyperactivity. This application was denied initially and on reconsideration.  Barris requested and received a hearing before an ALJ, after which the ALJ rendered a decision on 21 January 1999, finding that Barris had the severe impairments of attention deficit hyperactivity disorder ("ADHD") and anemia (a blood disorder), and borderline intellectual functioning, but was not disabled.  The Appeals Council thereafter vacated the ALJ's decision and remanded for a new hearing before the ALJ to resolve a "discrepancy in the record" as to whether Barris's intellectual impairment was borderline intellectual functioning or, alternatively, mild mental retardation.  R1, Ex. at 368.

2

A second administrative hearing was held on 5 December 2000, before a different ALJ.  In a second written decision, issued on 8 January 2001, the ALJ again determined that Barris was not disabled within the meaning of the Social Security Act.  The ALJ found that (1) Barris had only the "severe" impairment of mild mental retardation; (2) Barris's ADHD was not severe because that condition was controlled with Ritalin, based on Gibbs's comments to Dr. Santhi K. Das that Barris's behavior had improved considerably after beginning medication in 1996; and (3) Barris's anemia was not severe because there was no evidence in the record that the condition caused any physical limitation.  Id. at 17.  In concluding that none of Barris's impairments resulted in "marked and severe" functional limitations, the ALJ noted that no medical expert or treating or examining source had concluded that the impairments, either singly or in combination, met or medically equaled in severity one set forth in the Listing of Impairments.  Id. Finally, the ALJ concluded that Barris had no functional limitations equal to any listed impairment, explaining that Barris had no limitation in five of the six relevant "domains"—attending and completing tasks, interacting and relating with others, moving about and manipulating objects, caring for himself, and health and physical well-being—and only a less than marked limitation in the sixth "domain"

3

of acquiring and using information.  Id.  Accordingly, the ALJ denied benefits and the Appeals Council denied review.

Gibbs, on behalf of Barris, then filed a complaint in federal district court seeking judicial review of the Commissioner's decision, and the parties consented in writing to proceed before a magistrate judge per 28 U.S.C. § 636(c).  R1-1, 14, 15.  The magistrate judge thereafter entered an order affirming the Commissioner's decision denying benefits.  R1-16.  Gibbs, again on behalf of Barris, timely appealed.  R1-17, 18.

## II.  DISCUSSION

On appeal, Gibbs argues that the medical evidence demonstrated that Barris met all of the requirements of Listing 112.05D for mental retardation. Gibbs first notes that the results of four sets of intelligence tests that Barris took between 1995 and 2000 established that he suffered from mild mental retardation, which the second ALJ found to be a "severe" impairment.  Gibbs then contends that the second ALJ erred by not specifically indicating in his decision whether he applied the 2000 or 2001 version of the child-mental-retardation regulations, but adds that Barris satisfied either version.  Gibbs also argues that the second ALJ improperly failed to find whether Barris's ADHD or anemia constituted an "additional and significant limitation of function" under Listing 112.05D.  Likewise, Gibbs claims

4

that the second ALJ was legally bound by the first ALJ's findings that Barris's ADHD and anemia were "severe" impairments, and could not reconsider those findings following the Appeals Council's initial remand. Gibbs asserts that, nevertheless, his ADHD met the requirements of Listing 112.05D because the record showed that he could not function adequately without medication because of the severity of his condition. Gibbs contends that the ALJ would have been required to find Barris disabled had the second ALJ properly reviewed the evidence.

We must determine whether the Commissioner's final decision, denying Gibbs's application for benefits on behalf of Barris, is supported by substantial evidence, see Richardson v. Perales, 402 U.S. 389, 401-02, 91 S. Ct. 1420, 1427-28 (1971), and must also review whether the correct legal standards were applied. McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Graham v. Bowen, 790 F.2d 1572, 1575 (11th Cir. 1986). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998) (internal citations omitted). "In other words, substantial evidence is 'more than a mere scintilla.'" Id. (citation omitted).

Upon a thorough review of the record on appeal, including all medical evidence, the complete transcript of the administrative hearing, and the ALJs' two written decisions denying benefits, and after consideration of the briefs of the parties, we find no reversible error.

A person under the age of 18 is disabled, and thus entitled to SSI benefits, if the person "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). Social Security regulations provide a three-step sequential evaluation process for determining whether a child is disabled. 20 C.F.R. § 416.924(a). First, the Commissioner must determine whether the child is engaged in substantial gainful activity. Id. If yes, the child is not disabled, but if not, the Commissioner must then proceed to the second question, which is whether the claimant has a severe impairment. Id. If not, the child is not disabled. Id. If yes, the Commissioner then must consider the third step, whether the child has an impairment that meets, medically equals, or functionally equals the Listings of Impairments. Id. If the child satisfies a listing, the child is conclusively disabled. Id.

Listing 112.05 indicates that mental retardation is "[c]haracterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning. The required level of severity for this disorder is met when the requirements in A, B, C, D, E, or F are satisfied." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 112.05. In relevant part to this case, section D of Listing 112.05 requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 112.05D. The regulations further provide that

> [f]or listings 112.05D and 112.05F, we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it causes more than minimal functional limitations, i.e., is a "severe" impairment(s), as defined in [20 C.F.R.] §416.924(a). If the additional impairment(s) does not cause limitations that are "severe" as defined in §416.924(c), we will not find that the additional impairment(s) imposes an additional and significant limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 112.00A. Under 20 C.F.R. § 416.924(a), an impairment will be found not severe if it is a slight abnormality, or combination of slight abnormalities, that causes no more than minimal functional limitations. 20 C.F.R. § 416.924(a).

7

In determining whether a child's impairment functionally equals a listing, the regulations require consideration of six "domains," which are "broad areas of functioning intended to capture all of what a child can and cannot do." 20 C.F.R. § 416.926a(b)(1). These six domains are: acquiring and using information; attending and completing tasks; interacting and relating with others; moving about and manipulating objects; caring for himself/herself; and health and physical well-being. Id. § 416.926a(b)(1)(i)-(vi). To satisfy the "functional equivalent" standard, a child claimant must have "marked" limitations in two domains or an "extreme" limitation in one domain. Id. § 416.926a(b)(1). A "marked" limitation is defined as a limitation that "interferes seriously with [the] ability to independently initiate, sustain, or complete activities," and is "more than moderate." Id. § 416.926a(e)(2). An "extreme" limitation is reserved for the "worst limitations" and is defined as a limitation that "interferes very seriously with [the] ability to independently initiate, sustain, or complete activities," but "does not necessarily mean a total lack or loss of ability to function." Id. § 416.926a(e)(3).

As an initial matter, Gibbs's argument that the second ALJ erred by not clarifying in his written decision whether Barris's claim was reviewed under the 2000 or 2001 version of the child-mental-retardation regulations is without merit.

8

In adopting the relevant changes, the Social Security Administration explicitly noted that "the rules make technical changes to the . . . childhood mental disorders listings. We expect that these rules will clarify the intent and purpose of the listings for evaluating mental disorders, and will simplify our adjudication of claims involving mental impairments." 65 Fed. Reg. 50,746, 50,746 (Aug. 21, 2000) (to be codified at 20 C.F.R. pts. 404 and 416). As such, the changes did not alter any substantive requirement for satisfying Listing 112.05D. See also Sullivan v. Zebley, 493 U.S. 521, 530 n.7, 110 S. Ct. 885, 891 n.7 (1990) (noting in 1990 that Listing 112.05 required proof of, inter alia, "IQ of 60-69, inclusive, and a physical or other mental impairment imposing additional and significant restriction of function or developmental progression") (emphasis added). In addition, these changes became effective on 20 September 2000, prior to the second ALJ's decision on 8 January 2001. See 65 Fed. Reg. at 50,746; Exh. at 8, 18.

Likewise, Gibbs's contention that the second ALJ was legally bound by the first ALJ's findings that Barris's ADHD and anemia were "severe" impairments is without merit. Social Security regulations provide that, in the event the Appeals Council orders a remand, the ALJ "shall initiate such additional proceedings and take such other action . . . as is directed by the Appeals Council in its order of

9

remand. The Administrative Law Judge may take any additional action not inconsistent with the order of remand." 20 C.F.R. § 410.665(b); see also 20 C.F.R. § 416.1477(b) (noting that an ALJ "shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order"). In this case, the Appeals Council's order vacated the first ALJ's written decision and remanded for further proceedings to resolve a "discrepancy in the record" as to whether Barris's intellectual impairment was borderline intellectual functioning or, alternatively, mild mental retardation. The Appeals Council specifically instructed the ALJ on remand to "[o]btain additional evidence concerning [Barris]'s impairments" including updated school records, "updated psychological (IQ) testing appropriate to [Barris]'s age, and medical source statements about what [Barris] can still do despite the impairments." R1, Ex. at 368. The Appeals Council further ordered the ALJ to offer Barris an opportunity for a new hearing and "take any further action needed to complete the administrative record." Id.

Because the Appeals Council vacated the first ALJ's written decision with instructions for the ALJ to obtain and consider additional evidence, the specific findings contained in that first written decision were never conclusively established and were subject to modification. Moreover, in order to fully

10

discharge the Appeals Council's mandate, the second ALJ was required to consider, <u>inter alia</u>, Barris's updated school records and "what [Barris] can still do despite the impairments," which constituted additional evidence directly bearing on Barris's functional limitations, the second requirement under Listing 112.05D. Finally, the second ALJ's action of reviewing the evidentiary record as a whole to determine if Barris's ADHD and anemia were "severe" impairments was "not inconsistent with the Appeals Council's remand order." <u>See</u> 20 C.F.R. § 416.1477(b).

Here, the ALJ's conclusion that Barris's condition did not satisfy Listing 112.05D, and, thus, that Barris was not disabled, is supported by substantial evidence. <u>See</u> <u>Richardson</u>, 402 U.S. at 401, 91 S. Ct. at 1427. The parties do not dispute on appeal that Barris was not engaged in substantial gainful employment or that Barris's mild mental retardation was a "severe" impairment, which satisfies the first two steps of the sequential analysis. <u>See</u> 20 C.F.R. § 416.924(a). Rather, Gibbs contends that the second ALJ failed to consider whether Barris's ADHD or anemia constituted an "additional and significant limitation of function" under the second portion of Listing 112.05D. Although the second ALJ did not explicitly analyze Barris's ADHD in the terms of Listing 112.05D, the ALJ did directly analyze the severity of Barris's ADHD and concluded that the evidence supported

11

a finding that the condition was controlled by medication, and, thus, was not a "severe" impairment. As noted above, the Social Security regulations expressly provide that, if an additional impairment is not "severe," as defined in § 416.924(a), the Commissioner "will not find that the additional impairment(s) imposes an additional and significant limitation of function." See 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 112.00A. Thus, Gibbs ultimately was required to demonstrate that Barris's ADHD or anemia was "severe" in order to satisfy the second portion of Listing 112.05D. See 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 112.05D (requiring "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function") (emphasis added).

Substantial evidence supported the ALJ's conclusions that Barris's ADHD and anemia were not "severe." First, at the administrative hearing, Gibbs directly testified that Barris was hard to control if he did not take his medication, but that he was able to control his behavior and concentration when he took Ritalin. Gibbs also told Dr. Das that Barris's behavior had "improved considerably" with Ritalin. R1, Ex. at 418. Barris's teachers consistently remarked that Barris's concentration and behavior improved when he took his medication. Id. at 213-14, 248-49. Medical progress reports similarly reflected that the medication was working with

12

no side effects.  See ex. at 283-85, 317-18, 322-23, 406-07.  Janice Griggs, the psychometrist, observed similar results while administering two intelligence tests in early 1997, noting that Barris "was somewhat wiggly and constantly verbalizing" during the first test but attended the second test well and gave "very good attention" and concentration to each task.  Id. at 303-06.  Dr. David D. Hall treated Barris during 1997 and 1998 for behavior problems secondary to ADHD, finding consistent improvement throughout the course of treatment with one exception in May 1998 when Barris temporarily regressed.  Id. at 309-11, 349-51. Dr. Das observed in 2000 that Barris's attention and concentration were in the average range, and diagnosed combined type ADHD in partial remission with medication.  Id. at 419-20.  Although there was additional evidence that Barris's behavior was a problem when he did not take his medication, substantial evidence supports the second ALJ's conclusion that Barris's ADHD was controlled with medication, and, thus, was not "severe" within the meaning of §416.924(a) and not a significant limitation under Listing 112.05D.

Likewise, substantial evidence also supported the second ALJ's finding that Barris's anemia was not "severe."  As the ALJ correctly noted, there is no evidence in the record to indicate that Barris's anemia resulted in any physical limitation.  Exh. at 16.  Other than her argument that the second ALJ was legally

13

bound by the first ALJ's finding that Barris's anemia was "severe," which is without merit for the reasons discussed in detail above, Gibbs's only other argument on appeal that Barris's anemia was severe for purposes of satisfying Listing 112.05D is a single statement that "[t]estimony also proved that [Barris] is required to take prescription medication for his anemia." Appellee Brief at 14-15. The fact that Barris is taking medication for anemia, standing alone, does not conclusively establish that his condition was severe and disabling. "A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling." Dawkins v. Bowen, 848 F.2d 1211, 1213 (11th Cir. 1998) (citation omitted). The fact that Barris's anemia is completely controlled by medication and has not resulted in any physical limitations forecloses Gibbs's conclusory allegation that the condition is severe for purposes of Listing 112.05D.

Finally, after finding that Barris's impairments did not meet or medically equal a listed impairment, the second ALJ properly considered whether Barris's condition functionally equaled a listed impairment. Ex. at 16-17. Reviewing the evidence of record in light of each of the six relevant "domains," the second ALJ found that Barris had no limitations with regard to attending and completing tasks, interacting with and relating to others, caring for himself, moving about and manipulating objects, and health and physical well-being, and a less than marked

14

limitation in acquiring and using information.  See 20 C.F.R. § 416.926a(b)(1).

Gibbs has offered no specific argument to dispute these conclusions, and the

medical evidence summarized above does not otherwise demonstrate that Barris

either had a "marked" limitation with respect to two of these domains, or an

"extreme" limitation as to any one of these domains.  See id. § 416.924a(e)(2), (3).

### III.  CONCLUSION

Substantial evidence supported the ALJ's conclusion that Barris did not did

not meet or equal the requirements of 20 C.F.R. Pt. 404, Subpt. P, App. 1

§ 112.05D for mental retardation.

Thus, for all of the foregoing reasons, we affirm.

**AFFIRMED.**