[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 05-14791
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 14, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 04-00416-CV-T-17-EAJ

YVONNE HEPPELL-LIBSANSKY,

Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(March 14, 2006)

Before DUBINA, HULL and MARCUS, Circuit Judges.

PER CURIAM:

Yvonne Heppell-Libsansky appeals the district court's order affirming the

Social Security Commissioner's denial of her application for disability insurance

benefits, filed pursuant to 42 U.S.C. §§ 405(g). On appeal, Heppell-Libsansky

argues that the Administrative Law Judge (ALJ) erred by: (1) erroneously evaluating the findings of her treating neuropsychologist and two treating physicians; (2) improperly evaluating her pain, fatigue, and medication side-effects and discrediting her subjective complaints; and (3) providing the vocational expert (VE) with an incomplete hypothetical that did not include all her impairments. After careful review, we affirm.

Our review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied. See 42 U.S.C. § 405(g); Crawford v. Comm'r of Soc.Sec., 363 F.3d 1155, 1158 (11th Cir. 2004); McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988). Thus, "[e]ven if the evidence preponderates against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." Crawford, 363 F.3d at 1158-59 (citation omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Id. at 1155; see also McRoberts, 841 F.2d at 1080 (holding that substantial evidence "must do more than create a suspicion of the existence of the fact to be established"). The Commissioner's factual findings are conclusive if supported by substantial evidence. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990); Allen v.

Brown, 816 F.2d 600, 602 (11th Cir. 1987). We "review de novo the legal principles upon which the Commissioner's decision is based." Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).

The relevant facts are straightforward. On October 31, 1996, Heppell-Libsansky filed the present application for disability insurance benefits, alleging a disability onset date of April 10, 1995 and claiming to be disabled as a result of fibromyalgia, depression, and hypothyroidism. Her application was denied initially and on reconsideration. Heppell-Libsansky requested and was granted a hearing before an ALJ. After the ALJ denied benefits, the district court reversed and remanded for further proceedings.

In 2002, on remand from the district court, the ALJ conducted a second hearing. At the time of the hearing, Heppell-Libsansky was 52 years old, had a bachelor's degree in elementary education, and had previously worked as a pharmacy technician and substitute teacher. She testified that her problems began in 1991 when she was hospitalized for two weeks for depression. She stopped working in April 1995 because she was experiencing pain "all over" which affected her connective tissue and joints and her primary care physician told her that she should stop working. On a scale of 1 to 10, her pain when she stopped working was a 10 and remained between an 8 and 10 since she had stopped

3

working. She stated that she had not returned to work since 1995 due to fibromyalgia,[1] chronic pain, and depression, and that her condition had continually worsened from 1995 to 2000.[2]

In addition to Heppell-Libsanky's testimony, the ALJ considered extensive medical evidence. The ALJ reviewed three residual functional capacity (RFC) evaluations conducted in May 1995, January 1997, and April 1997, and two psychiatric assessments completed in 1997. He also considered the records, including exam reports and progress notes, of the following treating physicians: (1) Dr. Luis Herrero, a neuropsychologist who began treating Heppell-Libsansky in 1991 for depressive symptoms and who, in June 1995, noted that Heppell-Libsansky was "still unable to work and . . . [I] doubt she [would] ever be able to

---

[1] Fibromyalgia is a condition characterized by widespread pain in joints, muscles, tendons and soft tissues.

[2] During this period, she reported having: (1) pain in her neck, low back and all joints; (2) stomach problems stemming from the medications she took; (3) problems with gripping and holding onto things stemming from arthritis; (4) to lie down at least one and a half hours a day as a result of fatigue and having to recline for two to three hours a day because of pain; (5) trouble bending and stooping because it caused tremendous pain in her back, legs, and neck; (6) problems with memory loss due to medication and pain; (7) problems with depression and anxiety; and (8) difficulty sleeping.

As for her daily activities, she reported that she: (1) would not have been able to sit for 6 out of 8 hours a day because it would put pressure on her lower lumbar, neck, legs, and joints, and she could sit comfortably only for 10 minutes; (2) could comfortably have stood for 10 minutes and walked for 10 to 15 minutes; (3) could not repetitively lift things because she did not have the strength and it aggravated her cervical problems; (4) did light chores, such as dusting, with the help of her husband, and prepared light meals; and (5) had difficulty driving because she could not sit for long periods of time and was on several medications.

4

return to gainful employment"; (2) Dr. Mark Smitherman, who began treating Heppell-Libsansky in 1990 for multiple ailments, including fibromyalgia; (3) the report of rheumatologist Dr. Adam Rosen, who treated Heppell-Libsansky in March 1997; (4) the report of Dr. Susan Fraser, another rheumatologist, who began treating Heppell-Libsansky in May 1998 and saw Heppell-Libsansky 6 times over a period of 16 months, with between 2 and 4 months between visits; and (5) the initial evaluation and exams performed by board-certified rheumatologist Dr. Leslie Goodman in 2000. Finally, the ALJ considered the evaluations, performed in connection with Heppell-Libsansky's disability application, of Dr. Gerald Hodan, Ph.D. (July 10, 1995 evaluation); Dr. Firdaus Dastoor (December 31, 1996 evaluation); and Dr. Peter Bursten, Ph.D. (January 7, 1997 evaluation).

At the administrative hearing, a vocational expert (VE) testified that Heppell-Libsansky's work history as a pharmacy assistant and substitute teacher was semi-skilled to light-skilled work. The ALJ asked the VE to explain the implications of the following hypothetical concerning what work Heppell-Libsansky could perform: disregarding the transferability of acquired skills, but considering her age, education and past work activity and assuming that she was limited to occasionally lifting a maximum of 20 pounds and frequently lifting less than 20 pounds further restricted by the need to alternate sitting and

5

standing and moderate concentration deficit, precluding complex jobs, but permitting simple routine repetitive tasks of an unskilled and low-end, semi-skilled variety.  The VE replied that these conditions would preclude past work activity, but opined that Heppell-Libsansky was able to perform the jobs of file clerk, mail clerk, and general office clerk.

In his order denying benefits, the ALJ found that Heppell-Libsansky had not engaged in substantial gainful activity since the onset of her disability in April 1995.  The ALJ gave the opinion of treating neuropsychologist Dr. Herrero some weight to the extent that Heppell-Libsansky's fibromyalgia symptoms resulted in physical and mental limitations, but not controlling weight because Dr. Herrero last provided treatment for only two months after the alleged disability onset date, and additional evidence showed periods of improvement in Heppell-Libsansky's condition since the onset date.  The ALJ accorded great weight to the findings of treating physicians Dr. Rosen and Dr. Goodman because they were consistent with other medical evidence.  The ALJ gave great, but not controlling, weight to the findings of Drs. Dastoor and Bursten because their findings were consistent with other record evidence, but the physicians did not have a treating relationship with Heppell-Libsansky.  Finally, the ALJ gave Dr. Hodan's findings some, but not

controlling, weight because he did not have a treating relationship with Heppell-Libsansky.

In his order, the ALJ reviewed treating physician Dr. Smitherman's progress notes from 1995-2000 in great detail. The ALJ noted that Dr. Smitherman left it to Heppell-Libsansky's discretion whether or not to continue working. The ALJ also fully articulated the physical findings made by Dr. Fraser during her treatment of Heppell-Libsansky, including all the diagnoses made in May 1998 and the course of treatment. However, the ALJ did not explicitly state the weight given to the findings of Drs. Smitherman or Fraser.

After considering all of the medical evidence, the ALJ stated that "[t]he medical evidence . . . indicate[d] that [Heppell-Libsansky]" had the severe impairments of fibromyalgia and depression. The ALJ found that she did not, however, have an impairment or combination of impairments equal to any impairments in the Listing of Impairments.

The ALJ next determined Heppell-Libsansky's RFC. In doing so, he considered her testimony about her symptoms and functional limitations and articulated the standard to be used and factors to consider in evaluating these symptoms, noting that subjective symptoms alone cannot establish disability. After summarizing Heppell-Libsansky's testimony, including her 1991

hospitalization for depression, her testimony regarding her medication side-effects, and fatigue, the ALJ found that her subjective descriptions of her symptoms were not entirely credible because her description was "considerably more limited and restricted than [was] established by the medical evidence, her own contemporaneous statements to treating sources, and medical source opinions." The ALJ referenced Dr. Smitherman's physical findings during fibromyalgia flare-ups and noted that they did not corroborate the extent of Heppell-Libsansky's alleged pain.

The ALJ found that Heppell-Libsansky retained the RFC "to occasionally lift and carry up to twenty pounds and frequently lift and carry up to ten pounds with the additional requirement of a sit/stand option." He noted that she did not appear to have any limitations of functioning with respect to daily activities and the record reflected that she could perform most daily chores with help from her husband, and could care for her finances and personal needs. The ALJ further found that she was limited to "simple repetitive tasks" of unskilled and low-end semiskilled positions, but allowed for a "sit/stand option" given Heppell-Libsansky's subjective reports of difficulty sitting for prolonged periods of time.

Relying on the VE's testimony, the ALJ concluded that Heppell-Libsansky could not return to her past relevant work, but could perform a restricted range of

8

light work, including the jobs of file clerk, mail clerk, and general office clerk, all jobs which existed in significant number in the national economy, thus precluding a finding of disability.

The Appeals Council reviewed the ALJ's decision, but found that the evidence of record supported his findings. After adopting the report and recommendations of the magistrate judge, the district court affirmed. This appeal followed.

First, Heppell-Libsansky argues that the ALJ did not give sufficient reasons for not giving controlling weight to the findings of her treating psychiatrist, Dr. Herrero. She contends that Dr. Herrero's opinion should have been given more weight because of his longstanding relationship with her and his opinion about her inability to work. Social Security regulations provide guidelines for the ALJ to use when evaluating medical opinion evidence. See 20 C.F.R. § 404.1527. The ALJ considers many factors when weighing medical opinions, including the examining relationship, the treatment relationship, how supported an opinion is, whether an opinion is consistent with the record, and a doctor's specialization. See 20 C.F.R. § 404.1527(d)(1)-(6). Moreover, opinions on some issues are not medical opinions because they are dispositive administrative findings reserved to the Commissioner, including the ultimate determination of whether a claimant is disabled. 20 C.F.R.

§ 404.1527(e)(1). In social security disability benefits cases, generally, the opinions of examining or treating physicians are given more weight than non-examining or non-treating physicians. See 20 C.F.R. § 404.1527(d)(1), (2), (5).

A treating physician's testimony "must be given substantial or considerable weight unless good cause is shown to the contrary." Crawford, 363 F.3d at 1159 (citation omitted). "This Court has concluded 'good cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Phillips v. Barnhart, 357 F.3d 1232, 1240-41 (11th Cir. 2004).

Here, the ALJ did not err by failing to accord Dr. Herrero's opinion controlling weight. Dr. Herrero's statement that he doubted Heppell-Libsansky would "ever be able to return to gainful employment" is not a medical opinion under the Social Security regulations, but rather, is a dispositive finding left to the ALJ. See 20 C.F.R. § 404.1527(e)(1). Moreover, though Dr. Herrero was a treating physician, he saw Heppell-Libsansky only twice after the alleged onset date. So, during the relevant coverage period, Dr. Herrero and Heppell-Libsansky did not have a longstanding relationship nor did he provide lengthy or frequent treatment. See 20 C.F.R. § 404.1527(d)(2)(i)-(ii). Also, other medical evidence,

which <u>was</u> obtained during the relevant coverage period, showed periods of improvement in Heppell-Libsansky's symptoms.[3]   Accordingly, the ALJ did not err by refusing to accord controlling weight to Dr. Herrero's opinion.[4]

Next, Heppell-Libsansky argues that the ALJ did not properly consider her pain, fatigue, and medication side-effects as separate, non-exertional impairments and improperly applied the pain standard in discrediting her subjective testimony by basing his decision only on her reported activities.  Again, we disagree.

When a claimant attempts to establish disability through her own testimony of pain or other subjective symptoms, she must show: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence that

---

[3]For example, in 1997, Heppell-Libsansky reported to Dr. Smitherman relief from her pain on Prednisone while her exams revealed no warmth or swelling in the hands or joints.  In 1998, she told Dr. Smitherman that she felt "significantly improved" on Plaquenil and Dr. Smitherman noted that she was overall doing "fairly well." She remained "reasonably stable" in 2000, and she reported she felt quite well.

[4]We also are unpersuaded by Heppell-Libsansky's argument that it was reversible error for the ALJ not to assign weights to the opinions of treating physicians, Drs. Smitherman and Fraser. The ALJ explicitly stated that he was following the five-step sequential evaluation process required by § 404.1520 and also described the controlling Eleventh Circuit law that he followed, including the weight to be afforded to treating physicians.  Although the ALJ did not explicitly assign a weight to Drs. Smitherman's or Fraser's opinions, it is clear from the ALJ's decision that he accorded controlling, or at least great, weight to those opinions.  After thoroughly discussing the medical evidence presented by both physicians, the ALJ found fibromyalgia to be a severe impairment.  It was Drs. Smitherman and Fraser who treated Heppell-Libsansky most extensively and regularly for this condition.  Moreover, when he gave several physicians' opinions some, or even great, weight, but not controlling weight, the ALJ reasoned that these other doctors did not have an ongoing, treating relationship with Heppell-Libsansky.  By explicitly not giving controlling weight to the opinions of non-treating physicians <u>and</u> finding fibromyalgia to be a severe impairment, the ALJ necessarily found the opinions of physicians who treated Heppell-Libsansky for fibromyalgia, such as Drs. Smitherman and Fraser, controlling.

11

confirms the severity of the alleged pain arising from that condition, or (b) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). If the ALJ discredits subjective testimony on credibility grounds, he must articulate explicit and adequate reasons for doing so, and failure to articulate reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true. Id.

Here, the ALJ properly articulated the pain standard and the factors to consider when evaluating Heppell-Libsansky's pain and other subjective symptoms. After considering the medical findings of over 10 doctors and Heppell-Libsansky's own testimony, the ALJ found that Heppell-Libsansky's description of her symptoms was "considerably more limited and restricted than [was] established by the medical evidence, her own contemporaneous statements to treating sources, and medical source opinions." This finding is explicit and adequate to discredit Heppell-Libsansky's testimony and supported by substantial evidence.

Finally, Heppell-Libsansky argues that the hypothetical question to the VE was improper because it did not include all of her impairments and that it improperly included a sit/stand option, even though this option typically applies to

12

professional or managerial positions. In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question that includes all of the claimant's impairments. See Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002). Simply put, from our thorough review of the record, the hypothetical posed to the VE, which included weight limitations and an option to alternate between sitting and standing, encompassed all relevant limitations the ALJ found in his RFC assessment. As we noted above, the ALJ expressly discredited Heppell-Libsansky's subjective testimony to the extent it did not conform to objective medical evidence. We found no error in the ALJ's reasoning for discrediting the subjective complaints and, accordingly, the limitations described by Heppell-Libsansky but not supported by objective medical evidence did not need to be included in the hypothetical to the VE.[5]

---

[5]Heppell-Libsansky also attacks the ALJ's use of the sit/stand option because the jobs identified by the VE were not professional or managerial. Social Security Regulation 83-12, in pertinent part, provides:

> There are some jobs in the national economy--typically professional and managerial ones--in which a person can sit or stand with a degree of choice. If an individual had such a job and is still capable of performing it, or is capable of transferrng work skills to such jobs, he or she would not be found disabled. However, most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitation of ability to sit or stand, a VS should be consulted to clarify the implications for the occupational base.

Social Security Regulation 83-12 (emphasis added). In this case, the VE clarified that the jobs she identified, although not professional or managerial in nature, did provide for a sit/stand option.

Based on the foregoing, substantial evidence supports the ALJ's decisions with respect to weighing the evidence, evaluating Heppell-Libsansky's impairments, and posing a hypothetical question to the VE. Accordingly, we affirm.

**AFFIRMED.**

---

Accordingly, the ALJ's hypothetical to the VE was proper and the VE testimony constituted substantial evidence to support the Commissioner's decision.