[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 17, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-16238
Non-Argument Calendar
_____

D. C. Docket No. 01-02860-CV-MHS-1

RENA M. JAMES,

Plaintiff-Appellant,

versus

JO ANNE B. BARNHART,
Commissioner of Social Security,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(April 17, 2006)

Before CARNES, MARCUS and PRYOR, Circuit Judges.

PER CURIAM:

Rena M. James appeals the district court's order affirming the Social

Security Commissioner's denial of her applications for disability insurance

benefits, filed pursuant to 42 U.S.C. §§ 405(g), and supplemental security income,

filed pursuant to 42 U.S.C. § 1383(c)(3). On appeal, James argues that (1) the

administrative law judge ("ALJ") violated her due process rights by not allowing

her to cross-examine the post-hearing consultative doctor, and (2) the ALJ's

findings that she could perform a full range of sedentary work were not supported

by substantial evidence.[1] After careful review, we affirm.

Our review of the Commissioner's decision is limited to an inquiry into

whether there is substantial evidence to support the findings of the Commissioner,

and whether the correct legal standards were applied. See 42 U.S.C. § 405(g);

---

[1] James also challenges the district court's rejection of two treating physicians' opinions. An ALJ "is free to reject the opinion of any physician when the evidence supports a contrary conclusion." Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985). The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004) (citations omitted). Good cause exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Id. at 1240-41 (citations omitted). The ALJ did not give controlling weight to Dr. Pelaez's opinion that James was disabled because Dr. Pelaez did not specify his relationship with James, provide facts and findings in support of his opinion, or indicate which parts of the medical record he relied on. Although it appears that Dr. Pelaez was James's treating physician, his medical statement and findings regarding James's residual functioning capacity are not accompanied by a report of a physical examination he performed on James, his report does not cite to any clinical findings supportive of his conclusions, and his conclusions were not supported by the majority of the medical evidence. None of the four consultative physicians who submitted reports concluded that James's sarcoidosis and other impairments prevented James from returning to work. Likewise, Dr. Eaton's opinion was not accompanied by a report of a physical examination nor did it cite any clinical findings supportive of its conclusions. It too was contrary to the other medical evidence in the record. Simply put, for the reasons given by the ALJ in his order denying James's applications and in light of the considerable medical evidence supporting a contrary conclusion, the ALJ did not err by rejecting Dr. Palaez's and Dr. Eaton's opinions.

2

Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004); McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988). Thus, "[e]ven if the evidence preponderates against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." Crawford, 363 F.3d at 1158-59 (citation omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Id. at 1155; see also McRoberts, 841 F.2d at 1080 (holding that substantial evidence "must do more than create a suspicion of the existence of the fact to be established"). The Commissioner's factual findings are conclusive if supported by substantial evidence. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990); Allen v. Brown, 816 F.2d 600, 602 (11th Cir. 1987).

First, James argues that the ALJ violated her due process rights by failing to hold a supplemental hearing to allow her to rebut the post-hearing consultative examination findings of Dr. Dallas Dan von Hessler who diagnosed James with sarcoidosis and noted her lungs showed wheezing, but found that she was in no acute distress and had no limitations with respect to work activities. Notably, Dr. von Hessler's findings were consistent with the findings of the three other consultative physicians who examined James prior to the hearings on her applications, all of whom found James had sarcoidosis or sarcoid and none of

3

whom concluded that James could not return to work. Moreover, the two doctors who performed residual physical capacity assessments concluded that James could perform sedentary to light work and had little to no limitations other than avoiding exposure to respiratory irritants.

Our review of the ALJ's order reveals the ALJ specifically stated that although Dr. von Hessler's report was consistent with the other medical evidence, the ALJ did not rely on this report as the sole basis to discredit James's claims of disability or the contradictory medical findings. Because the ALJ did not substantially rely on Dr. von Hessler's post-hearing report to deny James benefits, and the report was consistent with the reports of three other consultative physicians, and contradicted only the conclusory and unsupported findings of two of James's treating physicians, we can find no due process violation in the ALJ's denial of James's supplemental-hearing request. Cf. Demenech v. Secretary of the Dept. of Health and Human Servs., 913 F.2d 882, 885 (11th Cir. 1990) (noting that "where the ALJ substantially relies upon a post-hearing medical report that directly contradicts the medical evidence that supports the claimant's contentions, cross-examination is of extraordinary utility" (emphasis added)).

We likewise are unpersuaded by James's challenge to the evidence supporting the ALJ's finding that James retained the ability to perform a

4

substantial range of sedentary-to-light work. The Social Security regulations outline a five-step sequential evaluation process for determining whether a claimant is disabled: (1) The disability examiner determines whether the claimant is engaged in "substantial gainful activity;" (2) if not, the examiner decides whether the claimant's condition or impairment is "severe," i.e., whether it significantly limits claimant's physical or mental ability to do basic work activities; (3) if so, the examiner decides whether the claimant's impairment meets or equals the severity of the specified impairments in the Listings of Impairments, thereby precluding any gainful work activity; (4) if the claimant has a severe impairment that does not meet or equal the severity of an impairment in the Listings, the examiner assesses a claimant's "residual functional capacity," which measures whether a claimant can perform past relevant work despite the impairment; (5) finally, if the claimant is unable to do past relevant work, the examiner determines whether in light of residual functioning capacity, age, education, and work experience, the claimant can perform other work. See Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997); see also 20 C.F.R. §§ 416.920(a)(4), 404.1505(a).

Once the claimant has established some disability that prevents her from performing her past relevant work, as in this case, the burden then shifts to the

Commissioner to demonstrate that there are a significant number of jobs in the national economy that the claimant can perform. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987). The ALJ must articulate specific jobs the claimant can perform and this finding must be supported by substantial evidence. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). If the Commissioner makes such a showing, the burden shifts back to the claimant to prove she is unable to perform such jobs. Hale, 831 F.2d at 1011. The ALJ is required to "state specifically the weight accorded to each item of evidence and why he reached that decision. In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (quotation omitted).

The ALJ made specific findings regarding James's functioning capacity, including that (1) she could not engage in strenuous work activity requiring heavy lifting or prolonged standing and walking, but she could lift and carry up to 20 pounds occasionally and 10 pounds frequently, stand or walk for up to 2 to 6 hours in an 8-hour work day, and sit for 6 to 8 hours during a workday; and (2) she had slight to moderate postural limitations in regard to bending, balancing, stooping, kneeling, crawling, or crouching, could not climb, and could not be exposed to

6

heights, respiratory irritants, or temperature extremes. The ALJ also made specific findings regarding the types of jobs that James could perform, including salad maker, short order cook, cold meat cook, order clerk, taper of printed circuits, and surveillance system monitor. Simply put, in addition to the medical evidence before the ALJ, the physical residual functional capacity assessments and the testimony of the vocational expert constituted substantial evidence to support the ALJ's findings that James could perform a full range of sedentary work.[2]

**AFFIRMED**.

---

[2]The ALJ also did not err by failing to find obesity was a severe impairment. During her own testimony, James did not claim that her obesity was a functional impairment. Dr. Wolff was the only physician to attribute James's shortness of breath to obesity, but he did not elaborate on the severity or nature of her obesity, <u>and</u> did not conclude that her obesity was a functional impairment. Thus, there was <u>no</u> medical evidence from which the ALJ could have concluded that James's obesity was a severe impairment.